**PANHANDLE EASTERN PIPE LINE COMPANY, a Delaware corporation, and Trunkline Gas Company, a Delaware corporation, Plaintiffs,**

v.

**UTILICORP UNITED INC., a Delaware corporation, and Michigan Gas Utilities, a division of Utilicorp United Inc., Defendants.**

Civ. A. Nos. 95–815/96–208 MMS

United States District Court,
D. Delaware.

June 13, 1996.

Kenneth J. Nachbar, and David J. Teklits, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for plaintiffs.

Charles F. Richards, Jr., Daniel A. Dreisbach, and Daniel J. DeFranceschi, of Richards, Layton & Finger, Wilmington (Jeffrey M. Petrash, of Dickinson, Wright, Moon, Van Dusen & Freeman, Washington, D.C., of counsel), for defendants.

## *OPINION*

SCHWARTZ, Senior District Judge.

### I. INTRODUCTION

In this action brought under the Natural Gas Act of 1938, 15 U.S.C. § 717 *et seq.*, the Court has been called upon to heap another layer onto a morass of protracted litigation spanning the past eleven years. Plaintiff Panhandle Eastern Pipe Line Company ("Panhandle"), a Delaware corporation, has filed suit against defendant Utilicorp United Inc., another Delaware corporation, and Michigan Gas Utilities, a division of Utilicorp (collectively "MGU"). Panhandle seeks to recover $877,427.55, a refund of interest previously paid to MGU, plus interest on that interest. Panhandle alleges jurisdiction of this Court under 28 U.S.C. § 1331 and 15 U.S.C. § 717u.

Before the Court are 1) MGU's motion styled as a "motion to dismiss for failure to state a claim, or, in the alternative, to hold proceeding in abeyance," Docket Item ("D.I.") 5; and 2) plaintiff's motion for summary judgment, D.I. 10. The Court held a hearing in this matter on May 10, 1996. During the hearing, realizing the scope of

applicable precedent as ranging from slim to none, the parties and the Court agreed that the maze of procedural about-faces in this case requires this Court to write on what amounts to a clean slate. After consideration of extensive briefing and oral argument, for the following reasons, the Court will deny defendants' motion and grant plaintiff's motion.

## II. FACTUAL BACKGROUND

The material facts underlying this matter are uncontested. Panhandle is a natural gas pipeline company that is engaged in the interstate transportation of natural gas, and is subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC") under the Natural Gas Act. Complaint, D.I. 1 at ¶ 4. MGU, a former gas sales customer of Panhandle, is a local gas distributor of gas based in Monroe, Michigan.[1] D.I. 6 at 4; D.I. 7 at 4. MGU is regulated as a public utility by the Michigan Public Service Commission and is required by law to obtain gas at the lowest reasonable cost for resale to its customers. D.I. 6 at 4.

From September, 1981, through October 31, 1988, Panhandle was contractually obligated to provide gas through its pipeline to MGU. D.I. 1, Exhibit ("Exh.") A. In 1985, Panhandle petitioned the FERC for authority to "direct bill" its gas purchase customers, including MGU, for certain production related expenses. D.I. 7 at 4; D.I. 1, Exh. B. at ¶ 61,832. Obtaining the desired authorization, Panhandle collected approximately $1.2 million in direct billing charges from MGU. D.I. 6 at 5; D.I. 7 at 5.

The collection mechanism used by Panhandle and other gas providers was scrutinized in *Columbia Gas Transmission Corp. v. FERC*, 831 F.2d 1135 (D.C.Cir.1987), *on reh'g*, 844 F.2d 879 (D.C.Cir.1988).[2] In that

case, the Court of Appeals for the District of Columbia Circuit ("D.C.Circuit") found that the direct billing mechanism violated the so-called "filed rate doctrine"[3] and reversed the FERC's orders that condoned direct billing. *Columbia Gas v. FERC*, 831 F.2d at 1142. Pursuant to the court's ruling, on February 11, 1993, MGU obtained an order from the FERC directing Panhandle to refund, with interest, the monies collected from MGU by Panhandle under the direct billing scheme. D.I. 1, Exh. B at ¶ 61,836. The FERC specifically addressed its assessment of interest:

> ... [T]he Commission does not believe that ... MGU should lose the time value of the amounts [it] paid to Panhandle pursuant to an invalid direct bill. As between Panhandle on the one hand, and ... MGU on the other, it appears more appropriate that Panhandle, which made the original illegal direct bill proposal that led to this protracted litigation, bear the cost of the carrying charges.

*Id.* About one month later, on March 12, 1993, Panhandle complied with the FERC's order and paid the required funds to MGU, including an interest payment of $877,427.55. D.I. 1, ¶ 6. Payment of both principal and interest was rendered subject to Panhandle's right to appeal the FERC's order to the D.C. Circuit. MGU channeled the money received from Panhandle to MGU customers as required by Gas Cost Recovery proceedings before the Michigan Public Service Commission. D.I. 6 at 7.

Upon a rehearing of the issues, the FERC affirmed its February 11, 1993 order and Panhandle filed an appeal with the D.C. Circuit. The FERC moved the D.C. Circuit to remand Panhandle's appeal back to the FERC; the appellate court granted the motion on March 7, 1994. *Panhandle E. Pipe*

---

1. MGU, previously an independent corporation, is now a wholly-owned division of Utilicorp. Transcript of Motions Hearing, D.I. 18 at 21–22. Although Utilicorp was neither a party to the Panhandle–MGU contract in this matter nor involved in the FERC proceedings below, it explicitly agreed during the hearing in this matter to accept any liability on the part of MGU. *Id.*

2. Panhandle was an intervenor in *Columbia Gas*, see 831 F.2d at 1136.

3. The United States Supreme Court has explained that "[t]he 'filed rate doctrine' prohibits a federally regulated seller of natural gas from charging rates higher than those filed with the Federal Energy Regulatory Commission pursuant to the Natural Gas Act." *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 573, 101 S.Ct. 2925, 2928, 69 L.Ed.2d 856 (1981).

*Line Co. v. FERC,* No. 93–1507, 1994 WL 88238 (D.C.Cir. March 7, 1994). On October 14, 1994, the FERC issued an opinion and order revising the remedy it had previously ordered, limiting Panhandle's refund obligation to a refund of the principal amount only:

> Effective with the issuance of this order, Panhandle is authorized to bill ... MGU for the interest Panhandle paid on the refunds to ... MGU of the principal amount of ... costs previously collected from ... MGU pursuant to the unlawful direct bill. Panhandle's bill shall be for the actual amount of interest which it paid to ... MGU and shall not include any interest accruing on that interest.

D.I. 1, Exh. D at ¶ 61,193. In reaching this decision, the FERC found that "equity requires that Panhandle not be required to pay interest on its refund of these amounts," because absent the FERC's legal error in authorizing direct billing, Panhandle could have recovered at least some of the production related costs covered by those direct billings. *Id.* at ¶ 61,189.

Pursuant to the FERC's order, Panhandle billed MGU for $877,427.55, the amount of interest Panhandle had previously paid MGU in accordance with the FERC's February 11, 1993 order. D.I. 1, Exh. E. MGU refused to honor Panhandle's billing invoice, stating that it believed the "October 14, 1994 order is unlawful and does not provide a basis upon which MGU should be required to pay the invoice." D.I. 1, Exh. F. Upon a motion by MGU for rehearing, the FERC adhered to its previous findings and denied the motion. D.I. 1, Exh. G at ¶ 61,525. On February 13, 1995, upon learning that MGU had not repaid Panhandle the interest amount, the FERC further ordered that Panhandle be allowed to assess interest on the unpaid amount beginning March 15, 1995. D.I. 1, Exh. H at ¶ 61,160. MGU has appealed the issue of the interest refund and the interest further or-

dered thereupon to the D.C. Circuit. It has not, however, sought a stay of the FERC's orders.

Because MGU stood firm in its refusal to refund the interest money back to Panhandle, Panhandle brought suit in the Delaware Superior Court on July 27, 1995. That court decided to hold the suit in abeyance, finding that there was a colorable argument that jurisdiction over the matter may be exclusively federal.

Panhandle thereafter filed this federal action on December 27, 1995; its complaint prays for the amount of $877,427.55 plus interest as due and owing from MGU. Panhandle has already prevailed on these issues in a companion case filed in federal court in Michigan. *See Panhandle E. Pipe Line Co. v. Michigan Consolidated Gas Co.,* No. 95–CV–70970–DT Slip Op. (E.D.Mich. Feb. 16, 1996). In that diversity action, the Michigan Consolidated Gas Company ("MichCon"), another local gas distribution company, was subject to the same FERC orders at issue in the instant action. The court found that Panhandle's right to recover the money erroneously paid to MichCon was related to both the FERC orders involving the direct billing scheme *and* the contract initiating the relationship between the parties. *Id.* at 8. The court held that Panhandle should recover the interest previously paid to MichCon as well as pre-judgment interest, and entered a judgment accordingly. Not surprisingly, Panhandle argues strenuously that this Court's ruling in the case *sub judice* should mimic that of the MichCon case.[4]

## III. ANALYSIS

### A. Standards of Review—Motion to Dismiss and Summary Judgment

 The purpose of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of a complaint, not to resolve disputed facts or to decide the merits of the

---

4. After Panhandle filed the instant action, a similar action was filed by the Trunkline Gas Company against MGU. *See Trunkline Gas Co. v. Utilicorp United Inc. and Michigan Gas Utilities,* CA 96–208, Complaint, filed April 18, 1996. At the Panhandle–MGU oral argument, the parties represented to the Court that Trunkline is a wholly-owned subsidiary of Panhandle. D.I. 18 at 42–43. Subsequently, both actions were consolidated, D.I. 19; the parties have also agreed that the briefing and arguments in the Panhandle matter apply equally to the Trunkline action. *See* D.I. 20–21.

case. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 at 294 (2d ed. 1990). When considering a motion to dismiss, the Court should read the complaint generously, accept all of the allegations contained therein as true, and construe them in a light most favorable to the plaintiffs. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994). The Court will dismiss the complaint only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994).

▪ Similarly, at summary judgment, the non-moving party's allegations must be taken as true and, if those allegations conflict with those of the movant, the former must receive the benefit of the doubt. *Valhal Corp. v. Sullivan Assoc., Inc.*, 44 F.3d 195, 200 (3d Cir.1995) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977)). Under the Federal Rules of Civil Procedure, the Court shall grant summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

▪ When faced with case dispositive cross motions, the Court must consider the motions independently. *See Williams v. Philadelphia Hous. Auth.*, 834 F.Supp. 794, 797 (E.D.Pa.1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994). In this case, because the facts are undisputed, the issues presented are legal, rather than factual, and thus are suitable for resolution by judgment as a matter of law. Fed.R.Civ.P. 56(c); *Associated Hardware Supply Co. v. Big Wheel Distrib. Co.*, 355 F.2d 114, 119 (3d Cir.1965).

## B. The FERC Administrative Orders and Federal Court Action

Under the Natural Gas Act, "[a]ny party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States. ..." 15 U.S.C. § 717r(b). Both sides in this case have appealed the substantive issues, *i.e.*, issues going to the merits of the FERC's partial reversal of its previous order. *See* D.I. 6, Exh. B. That decision is now appropriately pending before the D.C. Circuit.

▪ The effectiveness of the FERC order while the appeal is pending is addressed by another provision of the Natural Gas Act: "The commencement of proceedings under subsection (b) of this section [717r] shall not, unless specifically ordered by the court, operate as a stay of the Commissions's order." 15 U.S.C. 717r(c). MGU has conceded that it has not moved for a stay of the FERC order, ostensibly because it perceived its chance of prevailing on such a motion in the D.C. Circuit was close to nil. D.I. 18 at 61. Consequently, absent a stay, the FERC's order is entitled to operation and effect notwithstanding the disposition of the appellate proceedings. *See Ecee, Inc. v. Federal Power Comm'n*,[5] 526 F.2d 1270, 1274 (5th Cir.) *cert. denied*, 429 U.S. 867, 97 S.Ct. 176, 50 L.Ed.2d 147 (1976) (resolution of a matter before an administrative or judicial tribunal is final unless and until it is stayed, modified, or reversed); *Panhandle v. Michigan Consolidated*, No. 95–CV–70970–DT, slip op. at 5.

Viewing the unstayed FERC order as final and enforceable, Panhandle filed suit against MGU in this Court and against MichCon in the Eastern District of Michigan, seeking recovery of the monies deemed erroneously paid by the FERC's latest order. Unlike its posture in the MichCon diversity action, Panhandle here alleges federal question jurisdiction based upon 28 U.S.C. § 1331. Similar, however, to the MichCon action, Panhandle also invokes 15 U.S.C. § 717u, a jurisdictional provision of the Natural Gas Act, 15 U.S.C. 717 *et seq.* Section 717u provides in relevant part:

The District Courts of the United States and the United States courts of any terri-

---

**5.** The Federal Power Commission was a predecessor agency to the FERC. *See e.g., Williams Natural Gas Co. v. FERC*, 3 F.3d 1544, 1546 (D.C.Cir.1993).

tory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder....

*Id.* Thus, under the statutory scheme, if Panhandle seeks enforcement of any liability or duty created by the FERC's orders, this Court has jurisdiction.

■ Panhandle argues that its complaint "states a valid claim for enforcement of the FERC orders requiring MGU to refund the interest amount." D.I. 7 at 11–12. During oral argument on the motions in this matter, Panhandle further argued that it is seeking to enforce the liability created by the FERC's determination. D.I. 18 at 7–8, 11. According to Panhandle, the FERC acted within its authority when it 1) determined the contractual rights and obligations between the parties, and 2) corrected the legal error in its previous ruling. *Id.* at 8.

If Panhandle is seeking this Court's enforcement under section 717u, the Court must discern whether the FERC created an enforceable duty or liability in the proceedings below. In its October 14, 1994 opinion and order entered in favor of Panhandle, the FERC found that it had previously committed legal error in ordering Panhandle to pay interest to MGU (and MichCon). D.I. 1, Exh. D. Having so found, the FERC held that the proper remedy would be to "put the parties as nearly as possible in the position they would have occupied had the error not been made." *Id.* at ¶ 61,188. After acknowledging that it was not required to order complete refunds of amounts collected in violation of the filed rate doctrine, including interest to be paid on those refunds, the FERC weighed the competing equities and held that it should have not required Panhandle to include interest in its refund of the unlawfully direct billed amounts. *Id.* at ¶ 61,189–90. By that stage of the proceedings, however, Panhandle had already paid MGU $877,427.55 in interest pursuant to the previous FERC order; thus, under the

FERC's revised remedy, MGU now owed Panhandle a refund of that amount.

The FERC, however stopped short of directly ordering MGU (and MichCon) to pay the money back to Panhandle. Specifically, the FERC merely ordered that Panhandle was "authorized *to bill* ... MGU for the interest Panhandle paid on the refund" to MGU. *Id.* at ¶ 61,193 (emphasis added). Panhandle maintains that the FERC ordered Panhandle to bill MGU for payment, as opposed to ordering MGU to pay, because that is how the FERC usually functions. D.I. 18 at 9–10, 33. Contrary to Panhandle's contention, however, when the FERC decided that Panhandle had overcharged MGU, the FERC did not shy from explicitly ordering Panhandle to refund, with interest, money back to MGU. D.I. 1, Exh. B at ¶ 61,836 ("Panhandle is to refund to ... MGU the Order No. 94 costs paid to Panhandle by ... MGU since 1986...."). But after deciding that Panhandle should not have paid interest to MGU, the FERC refrained from directly ordering MGU to tender a refund back to Panhandle.

The difference between these two FERC orders may stem from reasons relating to more than mere semantics. The FERC has been empowered by Congress "to perform any and all acts, and to prescribe, issue, make ... such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this chapter." 15 U.S.C. § 717o. Congress set limits, however, to the jurisdictional reach of the FERC. For example, the provisions of The Natural Gas Act do not apply "to the local distribution of natural gas or to the facilities used for such distribution...." 15 U.S.C. § 717(c). Further, when a facility is subject to regulation by a state commission, as is the case with MGU, the Act does not apply where the natural gas received from the seller at a state's boundary is used only within that same state. 15 U.S.C. § 717(c). Cognizant of the Act's exemption for local gas distributors, it appears that the FERC, in an abundance of caution, refrained from directly ordering MGU to pay back the money to Panhandle. This, apparently, was the first time the FERC reversed itself on an

order of interest that had been previously paid to a local distributor.

The FERC's perception of its limited reach, however, may have been more imagined than real. The Natural Gas Act empowers the FERC to evaluate and, if necessary, "determine the just and reasonable rate" of the interstate sale of natural gas. 15 U.S.C. § 717d(a). As per the contract between Panhandle and MGU, MGU agreed to pay Panhandle according to a rate schedule filed with the FERC. D.I. 1, Exh. A, Article II. The contract also provided that the original rate schedule could be amended or superseded. *Id.* In 1985, Panhandle proposed to the FERC a direct billing procedure which, in effect, altered the original rate schedule under the contract. Pursuant to its rate setting authority, the FERC granted approval of the new rate which was applied to Panhandle's interstate sale of gas to the local distributor, MGU. This arrangement was later invalidated by the appellate court as a violation of the filed rate doctrine. *See* D.I. 1, Exh. B at ¶ 61,833.

The FERC then was required to correct its legal error and make whole the parties harmed by the legal error found by the court. *Id.* at ¶ 61,835. Under the Natural Gas Act, the FERC has the power to amend or rescind its orders as necessary to carry out the Act's provisions. 15 U.S.C. § 717o. In exercising its equitable discretion in crafting a remedy, the FERC evaluated whether to institute a retroactive change in Panhandle's rate schedule, or to order a direct refund from Panhandle to MGU. D.I. 1, Exh. B at ¶ 61,835; *see also Towns of Concord, Norwood, & Wellesley v. FERC,* 955 F.2d 67, 73, 76 (D.C.Cir.1992) (the FERC's regulatory responsibility is inextricably intertwined with the equitable aspects of refunding past rates). Because MGU was no longer a Panhandle customer, the FERC found that MGU would best be made whole by a lump sum payment. D.I. 1, Exh. B at ¶ 61,835. As a further exercise of its equitable discretion, the FERC ordered that Panhandle also pay interest, dating back to 1986, on the lump sum payment to MGU. *Id.* at ¶ 61,836. *See also Laclede Gas. Co. v. FERC,* 997 F.2d 936, 944 (D.C.Cir.1993) (the FERC enjoys wide

discretion or latitude in crafting a remedy or sanction); *Estate of French v. FERC,* 603 F.2d 1158, 1162–63 (D.C.Cir.1979) (same).

Again, pursuant to its authority to rescind or amend its orders under the Natural Gas Act to correct legal error, the FERC ultimately recanted its order of interest owing from Panhandle to MGU. Panhandle argues that in so doing, the FERC created a duty or liability on the part of MGU to repay monies erroneously received from Panhandle. MGU counters that if there is such liability or duty to repay the interest to Panhandle, it was not the FERC order that created the liability. D.I. 18 at 65–66. Rather, MGU asserts, it was the contract between the parties, the terms of which the FERC reviewed, that created the "liabilities and relationships" between MGU and Panhandle. *Id.* at 65. MGU cites *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.,* 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956), which affirms the proposition that the Natural Gas Act presumes a capacity in natural gas companies to agree upon rates and make contracts accordingly; the FERC merely reviews these rates as initially set by the contracting parties. *Id.* at 343, 76 S.Ct. at 380.

Following this line of reasoning, MGU further argues that if this liability stems from a private contractual relationship, then this Court does not have jurisdiction under 15 U.S.C. § 717u, *i.e.,* jurisdiction to enforce any liability or duty created by a FERC order pursuant to the Natural Gas Act. In addition, MGU maintains that because this action stems from a private contract between the two parties, Panhandle cannot bring a private right of action to enforce a FERC order under the Natural Gas Act. D.I. 18 at 70. The Court agrees that the law in this circuit does not allow private litigants to sue for damages for a violation of the Natural Gas Act. *See Clark v. Gulf Oil Corp.,* 570 F.2d 1138, 1150 (3d Cir.1977), *cert. denied,* 435 U.S. 970, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978).

The Court disagrees, however, with defendants' view that the liability being sued upon in this Court was created by private contract. The United States Supreme Court has held that the Natural Gas Act enabled the Feder-

al Power Commission to "review rates and contracts made in the first instance by natural gas companies and, if they are determined to be unlawful, to remedy them." *United Gas v. Mobile,* 350 U.S. at 341, 76 S.Ct. at 379. Although Panhandle and MGU initially agreed upon a contractual rate of sale, when Panhandle sought a change in its billing that effectively altered the agreed upon rate, it then gave the obligatory notice of the change to the FERC. *See id.* at 343–44, 76 S.Ct. at 380–81. The FERC then approved the change as part of its rate-setting authority under the Natural Gas Act. Judging by the subsequent history of the FERC's initial decision, if the FERC knew then what it came to know in 1994, it apparently would have never approved the initial Panhandle change in the rate. Such 20–20 hindsight notwithstanding, it was the FERC's legal error that caused the parties to be in their current predicament. Absent the FERC's error, there would have been no payment of interest from Panhandle to MGU. Now, the FERC has admitted further legal error in ordering the interest payment in the first instance. It was these errors that resulted in the FERC's most recent rulings that Panhandle is entitled to the interest payment back, with interest. The labyrinth of errors all stem from the FERC's initial approval of the direct billing scheme as part of its rate-setting authority.

The Court finds that the FERC has evaluated its legal error and in exercise of its equitable discretion, the FERC has ruled that MGU owes Panhandle a refund of $877,-427.55. Because MGU refused to make payment, the FERC further ruled that interest on that sum shall be owing as well. In so ruling, the FERC has created a liability on the part of MGU to repay the money, with interest, that MGU erroneously collected from Panhandle. As a result, the Court holds that under 15 U.S.C. § 717u, this Court has jurisdiction to enforce this liability absent a stay of the FERC's order. Any alleged infirmity with the FERC's ruling involving the merits or its authority to so rule needs to be passed upon by the D.C. Circuit, not this Court.

## C. MGU's Motion to Hold This Proceeding in Abeyance

■ As an alternative to its motion to dismiss, MGU has moved the Court "to hold this proceeding in abeyance pending completion of appellate review by the D.C. Circuit. D.I. 5. MGU argues that going forward with this action could result in a waste of the resources of both the Court and the parties. D.I. 6 at 18. For example, MGU posits that if this Court enforced the liability resulting from the FERC's ruling, MGU would necessarily have to bill its customers at a rate of $8.00 per household to generate money to pay the judgment. D.I. 18 at 58. If the D.C. Circuit subsequently reversed the FERC determination, the exercise in assessment and collection would have been for naught. On the other hand, MGU argues, Panhandle will not be injured by the Court's "maintaining the status quo." D.I. 6 at 18.

Panhandle counters that MGU seeks to do indirectly what it cannot do directly, that is, obtain an effective postponement of the FERC orders at issue. D.I. 7 at 16. In this case, MGU has not sought a stay and conceded at oral argument that under prevailing law, any attempt to obtain a stay would be unsuccessful. D.I. 18 at 60–61. In addition, MGU frankly admitted that it is asking the Court to manage its docket and just "sit on" this case until the D.C. Circuit renders a decision. *Id.* at 61.

Congress has provided that the filing of an appeal of a FERC order on the merits "shall not, unless specifically ordered by the court, operate as a stay of the Commission's order." 15 U.S.C. § 717r(c). Thus, the pendency of an appeal of a FERC order is not a sufficient ground in and of itself for staying of this enforcement action brought by Panhandle. Under the Natural Gas Act, unstayed FERC orders are entitled to administrative operation and effect; a party seeking enforcement of such orders should not be denied that which is statutorily mandated. By stalling its ruling in this matter, the Court would effectively circumvent the scheme of review and enforcement crafted by Congress. Such manipulation of the Court's docket is inappropriate. Accordingly, defendants' motion to hold this case in abeyance will be denied.

**474**

## IV. CONCLUSION

The essence of this action is one of enforcement, and, constrained by its interpretation of the Natural Gas Act, the Court will resist interposing its own ideas about the merits of the orders sought to be enforced. Accordingly, the Court will grant plaintiff's motion for summary judgment and deny defendants' motion to dismiss or hold in abeyance. This notwithstanding, the Court agrees with its Michigan counterpart that it is entirely appropriate to allow defendants the right to seek reconsideration of the Court's decision in this matter if the FERC orders dated October 14, 1994 and/or February 13, 1995 are reversed by the D.C. Circuit or modified in some manner. *Cf. Panhandle v. Michigan Consolidated,* No. 95–CV–70970–DT, slip op. at 10.