2014 ND 163

Kathy INWARDS, Appellant

v.

NORTH DAKOTA WORKFORCE
SAFETY & INSURANCE,
Appellee.

No. 20140015.

Supreme Court of North Dakota.

July 31, 2014.

Stephen D. Little, Bismarck, N.D., for appellant.

Shanon M. Gregor, Special Assistant Attorney General, Fargo, N.D. for appellee.

KAPSNER, Justice.

[¶ 1] Kathy Inwards appeals from a judgment reversing an administrative law judge's ("ALJ") decision requiring Workforce Safety & Insurance ("WSI") to continue providing her disability and rehabilitation benefits. We conclude the ALJ erred as a matter of law in ruling Inwards had good cause for failing to comply with a retraining program because WSI's previous order requiring Inwards to participate in the retraining program had been appealed and had not been finally resolved at the time she withdrew from the retraining program. We affirm the district court judgment reversing the ALJ's decision and reinstating WSI's order of noncompliance.

I

[¶ 2] In 2004, Inwards was injured while employed as an assembler by Bobcat. WSI accepted liability for her claim and awarded Inwards vocational rehabilitation benefits to assist her in returning to work. In early June 2011, WSI issued a notice of intention to discontinue benefits ("NOID") stating Inwards' temporary total disability benefits would end on July 4, 2011, and would convert to retraining benefits, and she had 30 days to request reconsideration of the decision. WSI issued a formal order on June 27, 2011, requiring Inwards to "enter into training at Hutchinson Community College, Hutchinson, Kansas, in the Business Management & Entrepreneurship AAS program." On June 28, 2011, Inwards requested reconsideration of the vocational rehabilitation plan, but attended two college courses during the summer of 2011 in accordance with the plan.

[¶ 3] Inwards complained to her physician that she was having increased pain as a result of her course work. Although Inwards registered for fall courses at the college, she withdrew from them on Au-

gust 18, 2011. On October 21, 2011, WSI issued a NOID to Inwards stating "[t]here is no medical evidence that supports your professed inability to attend the classes as outlined in the administrative order dated June 27, 2011. You are now considered to be in non-compliance with vocational rehab." Inwards timely requested reconsideration of this NOID, and on January 13, 2012, WSI issued a formal order suspending Inwards' rehabilitation benefits based on her noncompliance with the rehabilitation plan. Inwards timely requested a hearing to challenge WSI's finding of noncompliance and suspension of benefits.

[¶ 4] On February 25, 2012, the ALJ affirmed WSI's June 27, 2011 order awarding retraining benefits, ruling WSI "demonstrated by a preponderance of the evidence that retraining is the first appropriate rehabilitation option" for Inwards. Inwards requested reconsideration, but the ALJ denied the request in an order dated May 11, 2012. Inwards did not appeal to the district court from the denied reconsideration.

[¶ 5] The hearing on Inwards' challenge to WSI's January 13, 2012 order denying her further rehabilitation benefits was held on December 12, 2012. The issue was whether Inwards had good cause for terminating her college training program. At the conclusion of the hearing, the ALJ requested the parties to submit briefs addressing whether WSI had authority to issue an order of noncompliance with vocational rehabilitation when the rehabilitation plan itself has been appealed and a final decision affirming or reversing the plan has not been issued. After receiving the briefs, the ALJ reversed WSI's January 13, 2012 order suspending benefits for noncompliance with the vocational rehabilitation plan. The ALJ reasoned:

3. Here the evidence shows that Ms. Inwards' physician told her she should

not pursue a career in computers and should not be going to school for that kind of career. Normally that would be good cause to stop attending classes. However, the record also shows that Ms. Inwards' physicians were misled by information provided by Ms. Inwards. Ms. Inwards should have been aware that her physicians did not have all of the pertinent information when they concluded she should not attend school because it was she who gave them the information. Because the basis of the physician's determination was created by faulty or incomplete information provided by Ms. Inwards, she does not have good cause to rely upon the physicians' decisions to refuse to attend the training.

. . . .

6. Ms. Inwards' appeal of the order was a timely, and statutorily allowed challenge to the June 27, 2011, order. That order did not become final until the administrative law judge denied Ms. Inwards' request for reconsideration on May 11, 2012.

7. WSI has pointed to no statute or case law that required Ms. Inwards to comply with a non-final order during the pendency of an appeal. A reasonably prudent person would refuse to attend vocational training while their appeal was being resolved. Here the law does not permit WSI to enforce an order that is not final, Ms. Inwards had a statutory right to appeal the order and WSI's January 13, 2012, order to enforce its June 27, 2011, order was premature. These circumstances constitute good cause not to comply with the order. Ms. Inwards behaved as a reasonably prudent person when she stopped attending the VCR [vocational consultant's report] she was appealing.

8. Although she did not have good cause in the form of a medical reason not to pursue the training, Ms. Inwards has demonstrated that because she had appealed the order and it was not final or enforceable, she did have good cause not to attend the training while her appeal was pending. Therefore WSI's January 13, 2012, order suspending benefits for non-compliance must be reversed.

[¶ 6] WSI appealed to district court and Inwards moved to dismiss the appeal, claiming the court lacked subject matter jurisdiction because WSI failed to serve the notice of appeal and specification of errors on Inwards and her employer. The court denied the motion to dismiss, concluding Inwards had no standing to object to defective service on her employer and there was good cause to excuse WSI's mistake about recently mandated court electronic filing requirements. The court reversed the ALJ's decision, concluding the finding of good cause was "not supported by law," and reinstated WSI's January 13, 2012 order of noncompliance.

II

[¶ 7] Inwards argues the district court erred in refusing to dismiss WSI's appeal because the court lacked subject matter jurisdiction.

A

[¶ 8] Inwards argues the district court should have dismissed the appeal because WSI failed to properly serve her with the notice of appeal and specification of errors.

[¶ 9] Appeals to the district court from decisions in administrative proceedings are statutory in nature and are not matters of original jurisdiction, but involve the exercise of appellate jurisdiction conferred by statute. *See Benson v.*

*Workforce Safety and Ins.*, 2003 ND 193, ¶ 5, 672 N.W.2d 640. For the court to have subject matter jurisdiction over an appeal, the appellant must satisfy the statutory requirements for perfecting the appeal. *See Carroll v. North Dakota Workforce Safety & Ins.*, 2008 ND 139, ¶ 11, 752 N.W.2d 188. One of those requirements under N.D.C.C. § 28–32–42(4) is that the appellant must timely serve the notice of appeal upon all parties to the proceeding. *Benson*, at ¶ 6. This Court has approved the use of service under N.D.R.Civ.P. 5 for service of a notice of appeal from an administrative agency's decision upon a party or a party's attorney. *See Reliance Ins. Co. v. Public Serv. Comm'n*, 250 N.W.2d 918, 921 (N.D.1977); *see also City of Casselton v. North Dakota Pub. Serv. Comm'n*, 307 N.W.2d 849, 852 (N.D.1981). While N.D.R.Civ.P. 4 controls service of process, which generally involves a summons and complaint, N.D.R.Civ.P. 5 governs service of papers other than process. *See Mid–Dakota Clinic, P.C. v. Kolsrud*, 1999 ND 244, ¶ 18, 603 N.W.2d 475.

[¶ 10] On April 15, 2013, this Court's amendments to N.D.R.Ct. 3.1 and 3.5 mandating electronic filing and service became effective. *See Order of Adoption*, No. 20130104 (April 11, 2013). Rule 3.5(e)(1), N.D.R.Ct., provides that "[a]ll documents filed electronically after the initiating pleadings must be served electronically through the Odyssey® system," and N.D.R.Ct. 3.5(e)(3) provides that "[a]ll attorneys must provide at least one e-mail address to the State Board of Law Examiners for accepting electronic service." Rule 3.5(f), N.D.R.Ct., further provides that "[o]n a showing of good cause, the court may grant appropriate relief if electronic filing or electronic service was not completed due to technical problems."

[¶ 11] On April 23, 2013, WSI's counsel filed a notice of appeal and specification of errors with the district court and attempted to electronically serve the documents on Inwards' counsel. The certificate of electronic service indicated the notice of appeal and specification of errors had been served electronically on Inwards' counsel, and the clerk of court's emailed notice of assignment and case number were sent to counsel on April 23, 2013. However, none of these documents were electronically served on Inwards' counsel. Inwards' counsel first learned of the appeal on May 20, 2013, when he was served with the certified record. WSI's counsel first learned of the lack of actual service when Inwards moved to dismiss the appeal on June 12, 2013. WSI's counsel then electronically served the notice of appeal and specification of errors on Inwards' counsel on June 13, 2013.

[¶ 12] WSI's counsel argues it is unclear whether the notice of appeal and specification of errors could have been served through Odyssey on April 23, 2013, or whether she selected the wrong filing event, "Efile" rather than "Efile and Serve." WSI's counsel argues the failure of the clerk of court's emailed notice of assignment and case number to be delivered to Inward's counsel was apparently caused by "another technical glitch." Inwards' counsel argues the notice of appeal could not be served until the case was filed and given a civil number by the clerk of court and the clerk of court's notification was simply sent to the wrong email address. Inwards' counsel contends the failure of service was caused by WSI's misunderstanding of Odyssey system requirements and amounted to "human error" or to "poor decision-making" rather than a "technical" problem.

[¶ 13] The district court found WSI attempted service through "the Odyssey File and Serve system as required" and "[d]ue to WSI's misunderstanding of the Odyssey

filing requirements, the Notice of Appeal filed by WSI was not received by Inwards' attorney. Nor did the Notice of Assignment filed by the clerk reach Inwards' attorney, for reasons unknown." The court noted it "did not issue any orders or rulings adverse to Inwards during the period of non-response, nor has Inwards been prejudiced by the mistake and subsequent modest delay." The court found "good cause" based upon "WSI's inadvertent mistake as a result of a misunderstanding of the technical filing requirements of the newly mandated electronic Odyssey filing requirements," and allowed WSI additional time to perfect service on Inwards.

[¶ 14] Rule 3.5(f), N.D.R.Ct., states the district court "may" grant appropriate relief if electronic filing or service are not completed because of "technical problems." Use of the term "may" in the rule indicates abuse of discretion is this Court's standard of review. *See, e.g., Hagel v. Hagel,* 2006 ND 181, ¶¶ 7–9, 721 N.W.2d 1; *City of Devils Lake v. Corrigan,* 1999 ND 16, ¶¶ 12–13, 589 N.W.2d 579. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *See Meier v. Meier,* 2014 ND 127, ¶ 7, 848 N.W.2d 253. Although Inwards argues a "technical problem" under the rule does not encompass human error, the word "technical" has been broadly defined as "[i]mmaterial, not affecting substantial rights, without substance." *Black's Law Dictionary* 1463 (6th ed.1990). Here, WSI attempted electronic service eight days after the effective date of the new rule. It is unclear why electronic service was not accomplished. The court found Inwards was not prejudiced and determined good cause existed to grant WSI appropriate relief.

[¶ 15] Under the circumstances, we conclude the district court did not abuse its discretion in allowing WSI additional time to electronically serve Inwards with the notice of appeal and specification of errors.

### B

[¶ 16] Inwards argues the district court should have dismissed the appeal because WSI failed to serve the notice of appeal and specification of errors on her employer, Bobcat. Although the court ruled Inwards lacked standing to object to WSI's lack of service on Bobcat, we need not decide this issue because we conclude service on Bobcat was not required under the circumstances.

[¶ 17] A district court lacks subject matter jurisdiction over an administrative appeal if service of the notice of appeal and the specification of errors is not made upon an employer who is one of the "parties to the proceeding before the administrative agency" within the meaning of N.D.C.C. § 28-32-42(4). *See Pederson v. North Dakota Workers Comp. Bureau,* 534 N.W.2d 809, 810 (N.D.1995). In *Pederson,* we explained:

A "party," as used in N.D.C.C. § 28-32-15 [currently N.D.C.C. § 28-32-42], is "each person named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party." N.D.C.C. § 28-32-01(8). The agency and all parties of record have the right to participate in the appeal. N.D.C.C. § 28-32-15(5) [currently N.D.C.C. § 28-32-42(5)]. This Court has construed "parties" under N.D.C.C. § 28-32-15 [currently N.D.C.C. § 28-32-42] to mean a real party in interest as well as an adverse party. *Reliance Ins. Co. v.*

*Public Service Commission,* 250 N.W.2d 918, 926 (N.D.1977).

The legislature has recognized the employer's status as an interested party. N.D.C.C. § 65–10–01 (specifically providing that *both* the employee *and* the employer may appeal from a bureau decision).

"[A]ny person who is directly interested in the proceedings before an administrative agency who may be factually aggrieved by the decision of the agency, and who participates in the proceeding before such agency, is a 'party' to any proceedings for the purposes of taking an appeal from the decision." *Application of Bank of Rhame,* 231 N.W.2d 801, 808 (N.D.1975). The party is an adverse party if its interests would be prejudicially affected by modification or reversal, regardless whether the party appeared as plaintiff, defendant, or intervenor. *Reliance Ins. Co.,* at 927.

*Id.*

[¶ 18] The record reflects that Bobcat did not make an appearance in these administrative proceedings. It also appears Bobcat had no adverse economic interest in the outcome of the appeal because, under WSI's three-year loss analysis for calculating employer premiums, Inwards' claim had dropped off Bobcat's experience rating at least by 2008. *See* N.D.C.C. §§ 65–04–01 and 65–04–17; N.D. Admin. Code § 92–01–02–18. Moreover, because the ALJ's decision reinstated vocational rehabilitation benefits to Inwards, Bobcat's interests were not adverse to WSI's interests.

[¶ 19] We conclude service of the notice of appeal and specification of errors on Bobcat was not required under the circumstances. The district court had subject matter jurisdiction to consider WSI's appeal.

## III

[¶ 20] WSI argues the ALJ erred in ruling Inwards had good cause for failing to comply with her vocational rehabilitation plan.

[¶ 21] When an ALJ issues an administrative decision, judicial review of the ALJ's decision is the same as that used for agency decisions. *See Workforce Safety and Ins. v. Auck,* 2010 ND 126, ¶ 9, 785 N.W.2d 186. We must affirm an agency order unless, among other reasons, we determine "[t]he order is not in accordance with the law" or "[t]he findings of fact made by the agency are not supported by a preponderance of the evidence." N.D.C.C. § 28–32–46(1) and (5). When an ALJ issues findings of fact, "we do not make independent findings or substitute our judgment for that of the ALJ, but determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record." *Bishop v. North Dakota Workforce Safety and Ins.,* 2012 ND 217, ¶ 6, 823 N.W.2d 257. An ALJ's rulings on questions of law, however, are fully reviewable on appeal. *See Higginbotham v. Workforce Safety and Ins.,* 2014 ND 147, ¶ 7.

[¶ 22] In *Fuhrman v. North Dakota Workers Comp. Bureau,* 1997 ND 191, ¶ 9, 569 N.W.2d 269, this Court explained:

Under N.D.C.C. § 65–05.1–04(6), a claimant is disqualified from receiving disability and vocational rehabilitation benefits if the claimant fails to attend an approved rehabilitation program without good cause. In this context, we can apply a similar definition to good cause that we used in the employment cases. A claimant has good cause for failing to attend a rehabilitation program if the claimant has a reason that would cause a reasonably prudent person to refuse to

attend the rehabilitation program under the same or similar circumstances.

The ALJ's ruling that Inwards had "good cause" for failing to comply with her retraining program because WSI's previous order establishing the retraining program had not been finally resolved is unsustainable for two reasons.

[¶ 23] First, the only reason relied upon at the administrative hearing by Inwards for failing to comply with her vocational rehabilitation plan was that her doctors ordered her to discontinue the retraining plan because it was not a good option for her. The ALJ, however, rejected this reason as constituting "good cause" because "the basis of the physician's determination was created by faulty or incomplete information provided by Ms. Inwards." The ALJ broached the question whether Inwards had any obligation to follow WSI's initial order instituting her vocational rehabilitation plan until her appeal of that order had been finally resolved, and requested further briefing by the parties on the issue. There is no evidence whatsoever to support the ALJ's finding of "good cause" based on a reason Inwards never claimed or considered.

[¶ 24] Second, the ALJ's decision is not in accordance with the law. In ruling Inwards had no obligation "to comply with a non-final order during the pendency of an appeal," the ALJ reasoned:

4. WSI's orders are final and enforceable in only two circumstance[s]—either there has been no timely appeal as provided in N.D.C.C. § 65–01–16(4) & (7), or an administrative law judge designated by the Office of Administrative Hearings has issued a final order as provided in N.D.C.C. § 65–02–22.1, N.D.C.C. §§ 65–01–16(4) & (7) (providing that a decision is only final if a timely reconsideration or rehearing is not requested); and 65–02–22.1 (providing that final decisions are issued by ALJs).

5. When WSI issues an order there is a right to appeal that order. N.D.C.C. § 65–01–16(7). Until an order is final, it cannot be enforced unilaterally and it cannot be violated. If the law was interpreted in any other way an injured worker's right to appeal a vocation rehabilitation plan would be merely a subterfuge, or facade, an exercise in futility. Certainly that cannot be the Legislature's intent. See N.D.C.C. § 1–08–38 (statutes are intended to be reasonable; just and effective; and feasible of execution).

[¶ 25] Granted, other statutes in the Administrative Agencies Practice Act and the Workforce Safety and Insurance laws address "final" orders for purposes of appealability and the termination of proceedings. See, e.g., N.D.C.C. § 28–32–41 ("Unless a later date is stated in the order, a final order of an administrative agency is effective immediately...."); N.D.C.C. § 28–32–42(3)(a) ("Only final orders are appealable."); N.D.C.C. § 65–01–16(4) ("Absent a timely and sufficient request for reconsideration, the notice of decision is final and may not be reheard or appealed."); N.D.C.C. § 65–05–03 ("The organization shall have full power and authority to hear and determine all questions within its jurisdiction, and its decisions, except as provided in chapter 65–10, are final and are entitled to the same faith and credit as a judgment of a court of record."); N.D.C.C. § 65–10–01 (circumstances in which "the final action of the organization" may be the subject of an appeal). However, the ALJ's focus on when an administrative decision becomes "final" for purposes of appeal or the termination of proceedings obfuscates the real issue in this case: what is the effect of a nonfinal administrative

order until it does become "final"? Although the statutes attempt to define finality for purposes of appealability and the termination of proceedings, they do not specifically address the effect of nonfinal orders. The ALJ essentially ruled nonfinal orders may be simply ignored because they have no effect whatsoever. The ALJ's conclusion is fundamentally wrong.

[¶ 26] It is axiomatic that "[a] *complete* resolution of matters before an administrative or judicial tribunal does not wait for finality until an appeal is decided; it is final *unless and until* it is stayed, modified, or reversed," and in the absence of a stay, "orders are entitled to have administrative operation and effect during the disposition of the proceedings." *Ecee, Inc. v. Federal Power Comm'n*, 526 F.2d 1270, 1274 (5th Cir.1976); *see also Panhandle E. Pipe Line Co. v. Utilicorp United Inc.*, 928 F.Supp. 466, 470 (D.Del.1996). "Generally, the decision of an administrative officer or agency, as to a matter within its power, is operative until reversed or suspended, even if that order is erroneously or improvidently granted." 73A C.J.S. *Public Administrative Law and Procedure* § 284 (2004) (footnotes omitted); *see also Manning v. Feidelson*, 175 Tenn. 576, 136 S.W.2d 510, 512 (1940); *cf. Klagues v. Maintenance Eng'g*, 2002 ND 59, ¶ 30, 643 N.W.2d 45 (noting interlocutory orders of district courts are effective). Furthermore, the institution of proceedings to review an order of an administrative agency does not operate as a stay of further proceedings before the agency, and does not in itself stay enforcement of an agency decision. *See* 2 Am. Jur. 2d *Administrative Law* § 552 (2004); 73A C.J.S. *Public Administrative Law and Procedure* § 344 (2004). The rationale for this basic principle has been explained in the context of judicial proceedings:

The effective administration of justice is necessarily rooted on unremitting respect for a court's valid orders by all concerned. This principle uniquely governs the conduct of the parties to an action within a court's jurisdiction. Absent unequivocal adherence to the court's rulings at all stages of litigation, the entire adjudicatory system would be severely compromised.

*Handwerker v. AT & T Corp.*, 211 F.R.D. 203, 211 (S.D.N.Y.2002). Compliance with nonfinal administrative adjudications is likewise necessary to govern the conduct of the parties until disputed issues are finally resolved.

[¶ 27] Our statutory scheme comports with this basic principle. Section 28–32–48, N.D.C.C., provides that "[a]n appeal from an order ... of an administrative agency does not stay the enforcement of the order ... unless the court to which the appeal is taken ... orders a stay." Under the ALJ's interpretation of the law that an administrative order does not become "final" and enforceable until all avenues of review and appeal have been exhausted, this statute would be meaningless. WSI has "continuing jurisdiction" over claims under N.D.C.C. § 65–05–04, which provides that WSI "at any time, on its own motion or on application, may review the award, and in accordance with the facts found on such review, may end, diminish, or increase the compensation previously awarded, or, if compensation has been refused or discontinued, may award compensation." *See Carlson v. Workforce Safety & Ins.*, 2012 ND 203, ¶ 14, 821 N.W.2d 760. Contrary to this statute, the ALJ's interpretation essentially divests WSI of any authority and power once a claimant seeks a hearing, review, reconsideration, or an appeal. Section 65–05.1–04(6), N.D.C.C., expressly provides that when an employee is in noncompliance with a qualified rehabilitation training program, WSI "shall dis-

continue disability and vocational rehabilitation benefits." The ALJ's reasoning would require WSI to continue providing benefits in violation of the statute and would render obsolete this Court's decisions requiring reinstatement of wrongfully denied benefits. *See, e.g., Rojas v. Workforce Safety and Ins.*, 2005 ND 147, ¶ 19, 703 N.W.2d 299. The ALJ's rationale would also render meaningless this Court's holding in *Sjostrand v. North Dakota Workers Comp. Bureau*, 2002 ND 125, ¶ 11, 649 N.W.2d 537, that disability benefits may be terminated without first providing an opportunity for an evidentiary hearing.

[¶ 28] We construe statutes together to harmonize them and to avoid absurd and ludicrous results. *See, e.g., Walberg v. Walberg*, 2008 ND 92, ¶ 16, 748 N.W.2d 702. The ALJ's interpretation of the law would gridlock administrative proceedings, leaving administrative agencies and the people who deal with them in prolonged states of legal limbo. We conclude the ALJ's ruling that WSI cannot enforce its orders until they have become "final" through exhaustion of all avenues of review and appeal is not in accordance with the law.

[¶ 29] We conclude the ALJ's finding that Inwards had good cause for noncompliance with the rehabilitation plan is not supported by a preponderance of the evidence and is not in accordance with the law.

## IV

[¶ 30] We do not address other arguments raised because they either are unnecessary to the decision or are without merit. The district court's judgment reversing the ALJ's decision and reinstating WSI's order of noncompliance is affirmed.

[¶ 31] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.