**Jeffrey L. FORSTER, Appellee,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellant.**

**Civ. No. 890116.**

Supreme Court of North Dakota.

Oct. 24, 1989.

Gene Buresh, of Freed, Dynes, Reichert & Buresh, P.C., Dickinson, for appellee.

Dean J. Haas, Asst. Atty. Gen., North Dakota Workers Comp. Bureau, Bismarck, for appellant.

VANDE WALLE, Justice.

The North Dakota Workers Compensation Bureau appealed from a judgment of the district court which retrospectively applied the due-process requirements announced in *Beckler v. N.D. Workers Comp. Bureau,* 418 N.W.2d 770 (N.D.1988), to Forster's claim regarding the termination of his disability benefits, and which awarded Forster disability benefits from the date of termination through the date of the Bu-

reau's final administrative order denying further benefits. We affirm.

Jeffrey Forster, a resident of Dickinson, North Dakota, filed an application for workers compensation benefits on December 24, 1986, in connection with an injury sustained while employed as a floorhand by Well Tech, Inc. The Bureau accepted the claim, paid Forster's medical expenses and paid him disability benefits from December 20, 1986, through July 26, 1987.

On July 21, 1987, the Bureau notified Forster by letter of its decision to terminate his disability benefits on July 26, 1987. It is conceded by the Bureau that its letter did not conform to the due-process requirements subsequently announced by this court in *Beckler v. N.D. Workers Comp. Bureau, supra. Beckler,* which was decided on February 1, 1988, held that due process requires that a recipient of disability benefits receive pretermination notice that his or her disability benefits would be terminated, a summary of the medical evidence supporting termination, and an opportunity to respond prior to the termination of his or her benefits. We concluded in *Beckler* that such procedures would act as an initial check against an erroneous decision to terminate an individual's benefits.

On December 15, 1987, the Bureau issued an order denying any further disability benefits to Forster. Forster timely submitted a petition for rehearing with the Bureau. A formal hearing on Forster's petition was held on April 14, 1988, in Dickinson. Neither Forster's petition nor his argument at the formal hearing asserted any violation by the Bureau of his due-process rights under *Beckler,* even though *Beckler* had been decided by that time. On August 26, 1988, the Bureau issued a decision affirming its earlier order denying Forster further disability benefits. The delay between the formal hearing and the order affirming the denial of benefits was apparently due to the deposition of Dr. Dahl which was taken in June 1988 and transcribed in July 1988.

On September 12, 1988, Forster appealed the Bureau's August 26 decision to the district court pursuant to Section 28–32–19, N.D.C.C. In compliance with Section 28–32–15, N.D.C.C., Forster submitted specifications of error with his notice of appeal. Forster's specifications of error did not contain any allegation that he had been denied due process. The specifications of error submitted to the district court simply contained allegations that the Bureau had erred in finding that Forster was not disabled, and further erred in finding that Forster failed to prove that he was entitled to further benefits under the North Dakota Workers Compensation Act. Nevertheless, Forster did raise a due-process issue in his brief to the district court, contending that the Bureau violated his constitutional rights under the *Beckler* decision. The Bureau not only failed to object to the fact that the due-process issue was not raised by Forster in his specifications of error, but in its responsive brief to the district court the Bureau argued the due-process issue.

On February 9, 1989, the district court entered judgment affirming the Bureau's decision to terminate Forster's disability benefits. However, the court's judgment held that the due-process requirements of *Beckler* must be applied retrospectively. Because Forster had not received proper pretermination notice as required by *Beckler,* the district court awarded Forster disability benefits from the date of termination on July 26, 1987, through the date of the Bureau's final rehearing decision on August 26, 1988. The Bureau subsequently filed a timely notice of appeal to this court.

The portion of the district court's judgment affirming the Bureau's decision to terminate Forster's disability benefits was not appealed by Forster. Therefore, the sole issue raised by the parties on this appeal is whether the due-process requirements announced in *Beckler* should have been applied retrospectively. It is the Bureau's contention that the district court should have applied *Beckler* prospectively only, and that it should not have been applied to Forster's case which commenced before the *Beckler* decision.

Initially, the Bureau argues that the *Beckler* due-process issue was not properly raised at the district court level because Forster did not allege the due-process violation in the specifications of error he submitted pursuant to Section 28–32–15. However, the record indicates, and the Bureau's counsel admits, that the Bureau failed to make any objection at the district court to Forster's raising of the due-process issue, and that it briefed and argued the issue at that level. Because the Bureau failed to object that the due-process issue was not contained in Forster's specifications of error, and because it voluntarily proceeded to brief and argue the constitutional issue before the district court, we think it was proper, under the circumstances of this case, for the district court to entertain the *Beckler* due-process issue.[1] *Cf.*, Rule 15(b), N.D.R.Civ.P. [when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings].

Under traditional Blackstonian theory a court's decision was to have only a retrospective effect, since the very act of overruling was seen as a confession that an earlier rule was erroneous and should not have been applied in the first place. See Note, *Prospective Overruling and Retroactive Application in the Federal Courts,* 71 Yale L.J. 907 (1962). However, courts eventually began to retreat from the traditional rule of applying case decisions in only a retrospective fashion. This retreat culminated in the case of *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360

(1932) [typically referred to as the "Sunburst Doctrine"], in which the United States Supreme Court ruled that the Supreme Court of Montana had not denied due process to one of the parties to the case when it overruled a precedent and failed to apply it retrospectively.

Justice Cardozo noted:

"We think the Federal Constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. ... The choice for any state may be determined by the juristic philosophy of the judges of her courts, their conceptions of law, its origins and nature." *Sunburst,* 287 U.S. at 364–365, 53 S.Ct. at 148–149, 77 L.Ed. at 366–367.

Thus today "it [is] recognized that retrospective operation of an overruling decision is neither required nor prohibited by constitutional provisions, and that whether and to what extent a new rule adopted in an overruling decision will be given retroactive effect is not a matter of constitutional compulsion, but a matter of judicial policy, to be determined by the court after weighing the merits and demerits of the particular case." Annotation, *Prospective or Retroactive Operation of Overruling Decision,* 10 A.L.R.3d 1371, 1384 (1966). In the past, this court has recognized and utilized both the "traditional" rule of retrospective application of judicial decisions,[2] and the more "modern" rule that a court may validly apply its decisions in a purely prospective manner.[3]

---

1. In *Johnson v. Elkin,* 263 N.W.2d 123 (N.D. 1978), we held that "a question of the constitutionality of an act under which an administrative agency operates may be raised for the first time on appeal to the district court" when based upon the record made in the administrative agency. 263 N.W.2d at 127; *accord, Froysland v. North Dakota Workers Comp. Bureau,* 432 N.W.2d 883 (N.D.1988). However, in *Gramling v. N.D. Workmen's Comp. Bureau,* 303 N.W.2d 323 (N.D.1981), we held that a claim that the Bureau violated Gramling's constitutional right to due process by considering extra-record material, which claim was not raised before the Bureau, could not be raised in this court. Claimants should therefore raise these issues

before the Bureau and in their specifications of error on appeal in order to assure review of those issues on appeal.

2. See, e.g., *Olson v. Dillerud,* 226 N.W.2d 363 (N.D.1975) [decision which held unconstitutional two statutes would not be given only prospective application, but would be given retroactive application as well].

3. See, e.g., *Soo Line R.R. Co. v. State,* 286 N.W.2d 459 (N.D.1979) [decision forbidding use of a higher percentage of assessed value for centrally assessed property than which is used for locally assessed property is to be applied

In the present case, the Bureau argues that this court should make use of the "Sunburst Doctrine" and apply its holding in *Beckler* prospectively to deny Forster's claim that he did not receive the appropriate due process. The Bureau contends that it had justifiably relied upon its pre-*Beckler* termination procedures and that a retrospective application of *Beckler* would interfere with the Bureau's justified reliance upon its past administrative procedures. It also argues that because the district court actually found that Forster was not entitled to any benefits beyond those he was already paid, retroactive application of *Beckler* would not serve its purpose, i.e., that the requirement of certain procedural safeguards will minimize the risk of erroneous deprivation of disability benefits. Finally, the Bureau contends that a retrospective application of *Beckler* could create a potentially large, unfunded liability caused by newly filed claims from individuals whose benefits were terminated under the Bureau's procedures prior to the *Beckler* decision.

In *Olson v. Dillerud*, 226 N.W.2d 363 (N.D.1975), this court noted a number of relevant considerations to be used in determining whether or not a court decision should be given prospective effect, and quoted from the United States Supreme Court opinion in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), as follows:

"In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed, ... Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and

whether retrospective operation will further or retard its operation.' ... Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' " *Dillerud*, 226 N.W.2d at 369.

Applying this rationale, we find no reason for not giving *Beckler* retrospective application.

With respect to the first consideration, we must note that *Beckler* did not overrule any "clear past precedent on which the litigants may have relied." *Beckler* did not rule unconstitutional any particular statute in the North Dakota Century Code, nor did it reverse any specific caselaw which was being relied upon by the Bureau. Rather, *Beckler* simply found that the administrative pretermination procedures of the Bureau violated concepts of due process because the procedures failed to provide for pretermination notice, a summary of the medical evidence supporting termination, and an opportunity to respond prior to the termination of disability benefits. Likewise, *Beckler* was not a case "deciding an issue of first impression whose resolution was not clearly foreshadowed." While *Beckler* arguably may have been a case of first impression in the sense that it was the first case in which this court specifically imposed certain pretermination due-process limitations on the Bureau, it would be a stretch of the imagination to argue that such due-process limitations were novel and not clearly foreshadowed. Many cases decided prior to the *Beckler* decision have noted that when an individual has shown that he has a constitutionally protected property right, due process requires pretermination notice, a summary of the evidence supporting termination, and an opportunity to respond prior to the termination of the property interest. See, e.g., *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105

---

prospectively]; *Walker v. Omdahl*, 242 N.W.2d 649 (N.D.1976) [opinion holding a provision of the session laws unconstitutional would have prospective application only, consistent with the

"Sunburst Doctrine"]; *Kitto v. Minot Park Dist.*, 224 N.W.2d 795 (N.D.1974) [holding abolishing the doctrine of governmental immunity was to be given prospective application].

S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Hennum v. City of Medina,* 402 N.W.2d 327 (N.D.1987); *Lee v. Walstad,* 368 N.W.2d 542 (N.D.1985). In short, we find that *Beckler* was not a decision which overruled clear past precedent upon which the Bureau relied, and was not a case of first impression whose resolution was not clearly foreshadowed.

Next, we turn to the second consideration mentioned in *Dillerud.* In deciding whether to give prospective effect to a decision we must look to the purpose of the rule in question and determine whether a retrospective operation will further or retard its operation. As noted above, the Bureau contends that since the district court, on appeal, eventually determined that Forster was not entitled to any benefits beyond those he had received, the purpose of *Beckler* in requiring the Bureau to follow certain pretermination procedural safeguards would not be furthered. However, such an argument is akin to saying that pretermination due process is merely "form," and it ignores a very important aspect of due process, i.e., to allow an individual whose benefits are about to be terminated the opportunity to try to influence the decision-maker beforehand to avoid the possibly erroneous deprivation of his or her benefits. While one of the purposes of *Beckler* was to set forth pretermination due-process procedures to be followed by the Bureau, the *Beckler* decision was also intended to remedy a situation in which a claimant with a property interest in disability benefits is denied those benefits without proper pretermination due process. Thus we think that one of the purposes of *Beckler* was to remedy situations that are similar to Forster's. By applying *Beckler* retrospectively to Forster's claim, we would be furthering, and not retarding, the intentions of the *Beckler* decision. The

application of *Beckler* retrospectively would remedy the Bureau's termination of Forster's disability benefits without the appropriate due-process protections.

With regard to the final consideration in *Dillerud,* the Bureau argues that a retroactive application of *Beckler* would "produce substantial inequitable results" by creating a potentially large, unfunded liability from newly filed claims of individuals whose benefits were terminated under the Bureau's procedures prior to *Beckler.* However, in discussing the financial cost to the Bureau in complying with due-process requirements, this court in *Beckler* noted:

> "[T]he government's interest in conserving restricted fiscal and administrative resources must be considered. However, ... that incremental cost is outweighed by the [recipient's] significant property interest involved and by the risk of an erroneous deprivation." *Beckler* 418 N.W.2d at 775.

Likewise, we are inclined to believe that the hardships faced by Forster, and others like him, from the risk of erroneous deprivation of disability benefits owing to a lack of due process outweigh the fiscal cost to the Bureau. This is especially true in light of the fact that by definition, disability benefits are paid while the claimant is unable to work. See Section 65–01–02(12), N.D.C.C. Nevertheless, to restrict the unknown and unlimited liability that may result to the Bureau, while affording Forster and others in his situation a remedy for the termination of their property interests without proper due process, we hold that the *Beckler* decision should be applied retrospectively only to those claims that were pending in the appeal process as of the date of that decision, and in which the issue was raised before the Bureau and on appeal either by the specifications of error or trial by agreement of the parties.[4]

---

**4.** Although we have observed that *Beckler v. N.D. Workers Comp. Bureau,* 418 N.W.2d 770 (N.D.1988), did not rule unconstitutional any particular statute or reverse any specific case-law relied upon by the Bureau, the cases involving those circumstances are persuasive where, as here, a long-established administrative procedure is held to violate due process. See *Soo*

*Line R.R. Co. v. State, supra,* note 3. Thus a court upon considering the circumstances of the particular case may determine that an overruling decision should be given limited retroactive effect, so that the new rule, besides governing the rights of the parties to the overruling case, will govern the rights of parties to other cases which were pending when the overruling case

As we find that the district court did not err in applying the *Beckler* decision retrospectively to Forster's claim, the judgment of the district court is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.

was decided, but that the old rule will still govern the rights of the parties which had been terminated prior to the time the overruling case was decided. See Annotation, *Prospective or Retroactive Operation of Overruling Decision,* 10 A.L.R.3d 1371, 1378 (1966). See also *Finefrock v. Rice,* 426 P.2d 675 (Okla.1967) [holding in overruling decision involving construction of workmen's compensation Act held to apply retroactively to cases pending at the time of the overruling decision]; *Commonwealth v. Spofford,* 343 Mass. 703, 180 N.E.2d 673 (1962) [United States Supreme Court decision in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), holding that unconstitutionally obtained evidence was inadmissible in State criminal proceedings, applies retroactively to case that was pending when the *Mapp* decision was rendered].