1999 ND 174

Patrick STEWART, Claimant
and Appellee,

v.

The NORTH DAKOTA WORKERS
COMPENSATION BUREAU,
Appellant.

and

Office Machines & Furniture,
Respondent

No. 990057.

Supreme Court of North Dakota.

Aug. 27, 1999.

Stephen D. Little, Dietz, Little & Haas, Bismarck, ND, for claimant and appellee.

David E. Reich, Special Assistant Attorney General, Bismarck, ND, for appellant.

KAPSNER, Justice.

[¶ 1] The North Dakota Workers Compensation Bureau appeals from a judgment vacating the Bureau's order and remanding for reinstatement of Patrick Stewart's benefits. We affirm in part, reverse in part, and remand for entry of judgment consistent with this opinion.

I

[¶ 2] In 1993 Stewart injured his left shoulder at work. The Bureau awarded benefits, including temporary total disability benefits. In October 1996 the Bureau hired a private investigator, Francine Johnson, to investigate Stewart. She videotaped Stewart on five occasions between October and December 1996 performing various activities, including operating a backhoe, driving truck, shoveling, and operating snow removal equipment.

[¶ 3] On November 5 and November 30, 1996, Stewart signed income and work status cards indicating he had performed work but had not received pay. On December 19, 1996, Johnson interviewed Stewart. Stewart admitted he had been operating equipment and removing snow

to help a friend, Jason Duncan, who owned an excavating business, but denied he had been paid for his activities. Four days later, on December 23, 1996, the Bureau issued a notice of intention to discontinue benefits (NOID) to Stewart, stating the reason for termination as:

> Information received by the bureau indicates that you have provided a false statement regarding your return to work status.

The notice gave Stewart 21 days to respond. Stewart's benefits were terminated effective January 13, 1997. The Bureau subsequently interviewed and deposed Jason Duncan. In May 1997 the Bureau subpoenaed the bank records of Jason Duncan's business, Outback Excavating, and discovered six checks totaling $1,410.00 written to Stewart between June and November of 1996.

[¶ 4] On October 24, 1997, more than ten months after issuing the NOID and nine months after administratively discontinuing Stewart's monthly benefits, the Bureau finally issued an order terminating benefits and ordering Stewart to repay $2,357.14 in benefits previously received. Stewart requested a hearing, which was held on April 7, 1998. Stewart testified the checks from Outback Excavating were for items of personal property he had sold to Jason Duncan, not payment for work he had performed. The administrative law judge (ALJ) issued a recommended decision on April 27, 1998, finding the evidence did not establish that Stewart had made false statements or willfully failed to report income, and recommending reversal of the Bureau's order terminating benefits and ordering repayment of benefits.

[¶ 5] The Bureau rejected the ALJ's recommendations and, on May 29, 1998, issued its findings of fact, conclusions of law, and order determining Stewart had made material false statements regarding his work status and receipt of income. The Bureau affirmed that part of its October 24, 1997, order which terminated Stewart's benefits, but reversed that part of the order which required repayment of benefits received prior to January 13, 1997.

[¶ 6] Stewart appealed to the district court, which concluded the Bureau had failed to provide adequate notice as required by the due process clause and N.D.C.C. § 65–05–08.1(6) because the NOID failed to inform him of the evidence upon which the Bureau was relying to terminate benefits. The court further concluded the ten-month delay between the NOID and issuance of an appealable order was unreasonable. The court vacated the Bureau's order and remanded for reinstatement of Stewart's benefits. The court denied the Bureau's motion for reconsideration, and the Bureau appealed to this Court.[1]

## II

[¶ 7] In an appeal from a judgment involving the decision of an administrative agency, we review the decision of the agency, not the decision of the district court, and our review is limited to the record before the agency. *Bruns v. North Dakota Workers Compensation Bureau*, 1999 ND 116, ¶ 7, 595 N.W.2d 298; *Flink v. North Dakota Workers Compensation Bureau*, 1998 ND 11, ¶ 8, 574 N.W.2d 784. Under N.D.C.C. §§ 28–32–19 and 28–32–21, we affirm the agency's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violates the claimant's constitutional rights, or the agency's rules or procedures deprived the

---

1. In December 1997 the State brought criminal charges against Stewart under N.D.C.C. § 65–05–33 for willfully filing a false claim or making false statements to the Bureau. Stewart entered a conditional *Alford* plea of guilty, reserving his right to appeal under N.D.R.Crim.P. 11(a)(2). We affirmed the criminal conviction in *State v. Stewart*, 1999 ND 154.

claimant of a fair hearing. *Bruns,* at ¶ 7. In reviewing the agency's findings of fact, we exercise restraint and do not make independent findings or substitute our judgment for that of the agency, but determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Id.* It is the agency's responsibility to assess the credibility of witnesses and resolve conflicts in the evidence. *Theige v. North Dakota Workers Compensation Bureau,* 1997 ND 160, ¶ 9, 567 N.W.2d 334.

### III

[¶ 8] The Bureau asserts the district court erred in concluding the NOID violated the provisions of N.D.C.C. § 65–05–08.1(6) and Stewart's right to due process; erred in finding the ten-month delay in issuing an appealable order was unreasonable; and erred in ordering reinstatement of Stewart's benefits until the Bureau reinitiates the termination process.

### A

[¶ 9] The district court concluded the NOID failed to comply with N.D.C.C. § 65–05–08.1(6) because it did not include a summary of the evidence the Bureau was relying upon to terminate benefits. The Bureau asserts the district court applied the wrong version of the statute.

[¶ 10] At the time the NOID was issued in December 1996, N.D.C.C. § 65–05–08.1(6) provided:

Upon receipt of a report or other evidence indicating a claimant who is receiving temporary total disability benefits has been or will be released to return to work, the bureau shall issue and mail to the claimant a notice of intention to discontinue benefits. Such benefits may thereafter be discontinued on the date of release to return to work or twenty-one days following mailing of the notice, whichever is later. The notice must include a statement of the reason for the action, a brief summary of the evidence relied upon by the bureau, and an explanation of the right to respond and the procedure for challenging the action and submitting additional evidence to the bureau.

The legislature amended this statute in 1997, removing the requirement that the notice include a summary of the evidence and incorporating the remaining provisions into N.D.C.C. § 65–05–08.1(5). *See* 1997 N.D. Sess. Laws ch. 542, § 2.

[¶ 11] The legislature specified the 1997 amendment was "effective for all claims, regardless of the date of injury." 1997 N.D. Sess. Laws ch. 542, § 7. The Bureau asserts this amendment may therefore be applied retroactively to cure any defects in the December 1996 NOID, so that the failure to include a summary of the evidence does not invalidate the NOID.

■ [¶ 12] We find it unnecessary to decide which version of the statute would apply because, in either case, due process requires a summary of the evidence be provided to the claimant before termination of benefits. We addressed the due process implications of termination of disability benefits in *Beckler v. North Dakota Workers Compensation Bureau,* 418 N.W.2d 770 (N.D.1988). We concluded in *Beckler* that the continuing right to workers compensation disability benefits was a property right protected by the due process clause. *Id.* at 772. Analyzing the due process requirements for termination of ongoing benefits under *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), we concluded workers compensation disability benefits could be discontinued without a pretermination hearing only when there were "elaborate" pretermination procedural safeguards and a right to a timely posttermination evidentiary hearing. *Beckler,* at 773–75. The pretermination procedure must include, at a minimum, pretermination notice of the contemplated action, a

summary of the evidence supporting the proposed termination, and a pretermination opportunity to respond in writing to the alleged grounds for termination. *Id.* We have consistently reiterated that due process requires these pretermination protections, including a summary of the evidence. *See Vernon v. North Dakota Workers Compensation Bureau,* 1999 ND 153, ¶¶ 17, 20; *Unser v. North Dakota Workers Compensation Bureau,* 1999 ND 129, ¶ 7; *Flink v. North Dakota Workers Compensation Bureau,* 1998 ND 11, ¶ 9, 574 N.W.2d 784; *Frohlich v. North Dakota Workers Compensation Bureau,* 556 N.W.2d 297, 301 (N.D.1996); *Forster v. North Dakota Workers Compensation Bureau,* 447 N.W.2d 501, 502, 504 (N.D.1989); *see also* 8 Arthur Larson & Lex K. Larson, *Workers' Compensation Law* § 81.31(g) (1999).

[¶ 13] Section 65–05–08.1(6) was enacted in 1991, *see* 1991 N.D. Sess. Laws ch. 714, § 44, and incorporated the due process requirements enunciated in *Beckler. See Flink,* 1998 ND 11, ¶ 15, 574 N.W.2d 784. The legislature's subsequent amendment of the statute, removing the statutory requirement that the notice include a summary of the evidence relied upon by the Bureau, does not affect the independent constitutional requirements under the due process clause or overrule *Beckler* and its progeny. Accordingly, it is unnecessary for us to determine which version of the statute applies because due process requires that the notice include a summary of the evidence relied upon to terminate benefits.[2]

## B

■ [¶ 14] The Bureau asserts the December 1996 NOID provided adequate notice to Stewart.

[¶ 15] Our cases clearly require that the pretermination notice include a summary of the evidence relied upon by the Bureau for its decision to discontinue ongoing benefits. *See Vernon,* 1999 ND 153, ¶¶ 17, 20, 598 N.W.2d 139; *Unser,* 1999 ND 129, ¶ 7, 598 N.W.2d 89; *Flink,* 1998 ND 11, ¶ 9, 574 N.W.2d 784; *Frohlich,* 556 N.W.2d at 301; *Beckler,* 418 N.W.2d at 773–75. The December 1996 NOID issued to Stewart advised only that the Bureau believed he had provided a false statement regarding his return to work status, without identifying any supporting evidence. We held the virtually identical boilerplate NOID issued in *Vernon* failed to meet the requirements of due process:

> Here, the NOID said "information received by the bureau indicates that you have made false statements regarding your physical disability status. A formal legal order will be mailed in the near future." The NOID required Vernon to respond within 21 days, but did not include a "summary of the . . . evidence supporting termination." *Beckler,* 418 N.W.2d at 775. *See* N.D.C.C. § 65–05–08.1(6) (1993). More than a simple allegation of "false statements" is required to satisfy the fundamental requirements of notice and procedural due process. The NOID's vague and conclusory statement lacked specifics to apprise Vernon of the evidence relied upon by the Bureau.

*Vernon,* 1999 ND 153, ¶ 20, 598 N.W.2d 139; *see also Unser,* at ¶ 7 (similar boilerplate language in NOID).[3] The conclusory language in the December 1996 NOID failed to satisfy the requirements of procedural due process.

[¶ 16] The Bureau asserts any deficiency in the NOID was cured in this case be-

---

2. The parties do not raise the issue whether N.D.C.C. § 65–05–08.1 applies at all to termination of benefits for making false statements. By its terms, the statute applies to discontinuation of disability benefits when there is evidence the claimant "has been or will be released to return to work."

3. Stewart did not argue the Bureau's conduct constituted a systemic disregard of the law, which would trigger the sanctions outlined in *Madison v. North Dakota Department of Transportation,* 503 N.W.2d 243, 246–47 (N.D. 1993).

cause Stewart had previously been provided a copy of the transcript of his interview with private investigator Johnson, and therefore had actual knowledge of the evidence the Bureau had accumulated. The Bureau argues that, when viewed in this context, the notice provided to Stewart satisfied due process. The Bureau relies upon *Layon v. North Dakota State Bar Board,* 458 N.W.2d 501, 508 (N.D.1990):

> In the instant case, Layon was given five grounds for the finding of a lack of good moral character. While not models of specificity, they are sufficient to put an applicant on notice as to the factual basis for the allegations and if he believed them to be insufficient to aid him in his preparation for the hearing, he should have requested that they be made more definite and certain. The grounds cannot be viewed in a vacuum. Layon, himself, had knowledge of his prior action and the Board maintained an "open files" policy which enabled Layon to have access to the complete file upon which the Board would rely. Pursuant to request, Layon was given access to that file.

The Bureau asserts the NOID in this case, while concededly not a "model of specificity," was sufficient under *Layon.*

[¶ 17] We first note that, unlike Stewart, Layon received additional notice of the allegations and evidence against him:

> Also, Layon, his counsel, and counsel for the Board, met and discussed the exhibits upon which the Board intended to rely at the formal hearing. Both Layon and his attorney were adequately informed of the nature of the evidence to be presented, no objection was made to the indefiniteness at that time, and a full hearing was conducted thereafter. Under these circumstances, we find the allegation of denial of due process to be without merit.

*Layon,* 458 N.W.2d at 508.

[¶ 18] Furthermore, *Layon* is not a pretermination notice case. *Layon* involved an applicant for admission to the bar, and the notice involved was notice of the formal evidentiary hearing. There are distinct conceptual differences in the content of the notice required before terminating ongoing benefits without a pretermination hearing and the notice required prior to a hearing on an original application for a benefit. The notice which precedes a hearing on an original application must adequately notify the applicant of the claims to be presented by the government at the hearing, and allow a meaningful opportunity to refute those claims. *See Municipal Services Corp. v. State,* 483 N.W.2d 560, 564 (N.D.1992). It is merely notice of what will be more fully presented at the hearing. By contrast, when ongoing governmental benefits are to be terminated without a predeprivation hearing, the claimant must respond directly to the pretermination notice. The claims delineated in the notice are not fleshed out in an evidentiary hearing before benefits are terminated. The additional requirement of a summary of the evidence in pretermination cases is intended to allow the claimant to construct a meaningful response to the governmental action:

> [P]rior to the cutoff of benefits the agency informs the recipient of its tentative assessment, the reasons therefor, and provides a summary of the evidence that it considers most relevant. ·Opportunity is then afforded the recipient to submit additional evidence or arguments, enabling him to challenge directly the accuracy of information in his file as well as the correctness of the agency's tentative conclusions. These procedures, again as contrasted with those before the Court in *Goldberg,* enable the recipient to "mold" his argument to respond to the precise issues which the decisionmaker regards as crucial.

*Beckler,* 418 N.W.2d at 773, *quoting Mathews v. Eldridge,* 424 U.S. 319, 346, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

[¶ 19] The pretermination notice must be sufficiently detailed to frame the

precise issues, delineate the Bureau's theories and rationale for terminating benefits, and summarize the significant evidence supporting the Bureau's conclusions.[4] The pretermination information provided to Stewart, including the NOID and the transcript of the interview, did not satisfy the requirements of due process. Prior to issuing its October 24, 1997, order, the Bureau never specified which statements it believed were false, never specified the evidence it believed demonstrated the falsity of any statement, and never disclosed the theories or reasoning supporting its decision to terminate benefits. A person subject to termination of continuing disability benefits should not be required to speculate about the Bureau's intent behind a cryptic, conclusory NOID, nor be required to attempt to glean the basis for the Bureau's action from the transcript of an interview. The Bureau must sufficiently advise the injured worker of its reasoning and evidence so as to afford the worker a meaningful opportunity to " 'mold' his argument to respond to the precise issues which the decisionmaker regards as crucial." *Beckler*, 418 N.W.2d at 773, *quoting Mathews*, 424 U.S. at 346, 96 S.Ct. 893. The Bureau failed to do so in this case, and failed to meet the requirements of due process.[5]

## IV

[¶ 20] The Bureau's failure to give adequate pretermination notice was exacerbated by the lengthy delay before the Bureau finally issued an appealable order

on October 24, 1997. The evidentiary hearing was not held until April 7, 1998. Stewart asserts the delays in issuing an appealable order and providing the post-termination hearing violated due process. We agree.

[¶ 21] We have held that, although the Bureau may terminate disability benefits without a pretermination hearing if it adheres to the pretermination procedures outlined in *Beckler*, those pretermination procedures must be followed by a timely post-termination evidentiary hearing. *Vernon*, 1999 ND 153, ¶ 18, 598 N.W.2d 139; *Unser*, 1999 ND 129, ¶ 7, 598 N.W.2d 89; *Beckler*, 418 N.W.2d at 775. The due process clause requires that the post-deprivation hearing be provided at a meaningful time. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 547, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Barry v. Barchi*, 443 U.S. 55, 66, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979). At some point, a delay in the post-termination evidentiary hearing becomes a constitutional violation. *Federal Deposit Insurance Corp. v. Mallen*, 486 U.S. 230, 242, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988); *Loudermill*, at 547, 105 S.Ct. 1487. The Supreme Court in *Mallen*, at 242, 108 S.Ct. 1780, set forth three factors to be considered when determining whether the delay is too long:

[T]he significance of such a delay cannot be evaluated in a vacuum. In determining how long a delay is justified in affording a post-suspension hearing and

---

4. The Bureau is not precluded from introducing evidence at a subsequent hearing merely because the specific item of evidence was not disclosed prior to termination. Due process requires that the Bureau summarize the evidence, not provide the equivalent of a full evidentiary hearing by pretermination notice. The notice need only disclose the evidence in a summary fashion, sufficient to allow meaningful response.

5. Stewart also suggested that a predeprivation evidentiary hearing is required when benefits are terminated on the basis of false statements, because such claims turn upon

credibility of witnesses, not upon medical evidence which is generally more sharply focused and easily documented. *See Mathews*, 424 U.S. at 343–45, 96 S.Ct. 893; *Beckler*, 418 N.W.2d at 773–74. Stewart made only a passing reference to this issue, and did not provide persuasive reasoning or analysis of the case law to support his assertion. Parties raising constitutional challenges must bring up the heavy artillery or forego the attack entirely. *E.g., Jarvis v. Jarvis*, 1998 ND 163, ¶ 33, 584 N.W.2d 84. We therefore find it unnecessary to address this "perfunctory constitutional argument." *Id.*

decision, it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken.

[¶ 22] We have previously noted the importance of ongoing disability benefits to injured workers:

Continuation of disability benefits is significant to those who are entitled to them. By definition, disability benefits are paid while the claimant is unable to work. NDCC 65–01–02(8). Thus, this private interest is analogous to that involved in *Goldberg* and parallels the interest in employment present in *Cleveland Board of Education v. Loudermill, supra*. Unlike *Loudermill*, where a fired civil service employee could seek employment elsewhere, an employee who is still disabled would be unable to work.

*Beckler*, 418 N.W.2d at 774; *see also Ash v. Traynor*, 1998 ND 112, ¶ 13, 579 N.W.2d 180 ("a worker who is already receiving disability benefits has a significant reliance interest in, and expectation of, continuation of those benefits").

[¶ 23] The procedure employed by the Bureau in this case significantly affected Stewart's interests. When the Bureau issued the NOID and discontinued his benefits for more than nine months before issuing an appealable order, Stewart was left without wage-replacement benefits with no ability to challenge the Bureau's decision during that time. He was left without a remedy, and without adequate notice of the rationale and supporting evidence for the Bureau's decision, for an extended period of time. He was forced to wait more than ten months after the Bureau's initial decision to terminate benefits before he could even initiate the process to seek an evidentiary hearing. He was then forced to wait an additional six months, still without benefits, before the evidentiary hear-

ing was held. Finally, on May 29, 1998, more than 17 months after the Bureau's initial determination, and 16 months without wage-loss benefits, the Bureau finally issued its decision rejecting his arguments. This is clearly not the timely post-termination hearing envisioned under due process.

[¶ 24] The Bureau asserts the ten-month delay in issuing an appealable order was justified because the Bureau needed to conduct further investigation to support its claim that Stewart had made false statements. The Bureau's argument demonstrates a fundamental misunderstanding of the requirements of pretermination and post-termination due process. The procedure approved in *Mathews* and adopted in *Beckler*, which allows termination of benefits without a pretermination hearing if there is notice, a summary of the evidence, and an opportunity to respond, clearly envisions that the Bureau will conduct its investigation and marshal its evidence before the NOID is issued. The Bureau obviously cannot summarize the evidence it is relying upon, and the injured worker cannot respond to that evidence, if the Bureau has not substantially completed its investigation and developed its evidence.

[¶ 25] The anomaly in the Bureau's argument is demonstrated by the circumstances of this case. At the time the Bureau issued the NOID in December 1996, the only evidence it had of false statements was Stewart's statements and the videotape of him performing work for Outback Excavating. The Bureau had no evidence that Stewart had received payment for that work; the checks from Outback Excavating were discovered months later in the subsequent investigation. Thus, even if the Bureau had complied with due process and provided in the NOID a summary of the evidence it had at the time, it would not have disclosed reliance upon the checks to Stewart. The NOID itself references only false statements regarding return to work status, not failure to report income. However, when the Bureau final-

ly issued its order ten months later, the sole conclusion of law states:

> Claimant willfully made false statements in connection with this claim by willfully not reporting income to the Bureau in violation of N.D.C.C. § 65–05–33. Claimant forfeits any additional benefits in connection with this claim and shall repay the Bureau $2,357.14 for benefits paid to him from October 31, 1996, forward based on his false statements.

The Bureau therefore based its order terminating benefits entirely upon a theory which it had no evidence to support when it issued the NOID, and which Stewart had no opportunity to rebut.

[¶ 26] The Bureau is not free to terminate benefits on a hunch of wrongdoing, hoping that a subsequent investigation will reveal evidence supporting its position. The disabled worker's reliance on continuing monthly disability benefits, intended to provide wage replacement for the worker and his family, far outweighs the Bureau's alleged right to prematurely terminate benefits before marshaling its evidence. The Bureau must conduct its investigation on its own nickel, not on the disabled worker's.

[¶ 27] We recognize that in certain emergency situations involving public health and welfare an agency may terminate or suspend rights or benefits before conducting a full investigation. *Cf. Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (due process is not denied when postponement of a hearing is necessary to protect the public from contaminated food, a bank failure, or misbranded drugs, or to aid the war effort or collection of taxes). There is no public emergency which required the Bureau to terminate Stewart's benefits before substantially completing its investigation. Although the public may have a legitimate interest in discontinuing payment of benefits to a claimant who has made material false statements, that interest is fully protected by the statutory provision allowing the Bureau to seek repayment of benefits paid based upon a false claim or statement. *See* N.D.C.C. § 65–05–33(3).

[¶ 28] The third *Mallen* factor requires consideration of the likelihood that the interim decision may have been mistaken. The ultimate issue in this case, whether Stewart lied about receiving income, turned on the credibility of the witnesses. This is not a case where there is overwhelming documentary evidence supporting the Bureau's position, and, in fact, the Bureau had no direct evidence supporting this theory when it issued the NOID. In addition, Stewart was denied a fair opportunity to respond to the NOID by the Bureau's failure to provide adequate pre-termination due process. Under these circumstances, there was certainly a potential for the original determination to have been mistaken.

[¶ 29] We conclude the post-termination procedure in this case, where the Bureau prematurely terminated benefits and left Stewart without a timely remedy while it conducted a ten-month investigation to support its decision, violated due process.[6]

**V**

[¶ 30] Having concluded Stewart's due process rights were violated by the procedures employed by the Bureau in this case, we must determine the appropriate remedy. The district court determined the Bureau is required to start the entire termination process over, and Stewart is entitled to full reinstatement of benefits until that time. The Bureau argues Stewart eventually received appropriate notice

---

**6.** We do not suggest the Bureau is precluded from considering evidence which comes to light after it issues a NOID and terminates benefits. The Bureau may not, however, delay the issuance of an appealable order and the opportunity for an evidentiary hearing while it conducts a lengthy investigation to support its prior decision to terminate benefits.

and a full evidentiary hearing, and any due process violation was cured.

[¶ 31] Stewart argues the remedy implemented by the district court is required by our decision in *Flink*, 1998 ND 11, 574 N.W.2d 784. In *Flink*, the NOID advised Flink his disability benefits were being terminated because his vocational plan showed he had transferrable skills. Following the evidentiary hearing, the Bureau terminated benefits based upon its conclusion Flink had been released to return to work. The NOID issued to Flink had a pre-printed option indicating release to return to work, but that box was not checked. We concluded Flink had not been properly notified of the basis for the Bureau's decision and was "blindsided" by the Bureau's reliance on this new ground. *Id.* at ¶ 16. We therefore concluded Flink had been deprived of a fair hearing, and ordered reinstatement of benefits from the date of termination and prospectively until the Bureau provided proper notice to discontinue benefits. *Id.* at ¶ 19.

[¶ 32] *Flink* is distinguishable from this case. While Flink never received notice of the Bureau's contemplated action prior to the evidentiary hearing, and was "blindsided" by the Bureau's decision relying upon an undisclosed basis, Stewart did receive full notice prior to the evidentiary hearing in this case. The October 24, 1997, order outlined the Bureau's evidence and its conclusion that Stewart had made false statements when he denied receiving income from work. The basis of our holding in *Flink* was the failure to provide a fair hearing on the issue of release to return to work. *Id.* at ¶ 11. Stewart concedes he was not "blindsided" at the hearing and does not argue he did not receive a fair hearing.

[¶ 33] Because *Flink* is inapplicable, we must determine what remedy, other than the *Flink* remedy imposed by the trial court, is appropriate. In *Forster v. North Dakota Workers Compensation Bureau*, 447 N.W.2d 501 (N.D.1989), holding that the decision in *Beckler* could be retroac-

tively applied, we affirmed, without comment, the trial court's remedy to reinstate benefits to the date that the Bureau issued its post-hearing order. In *Vernon*, 1999 ND 153, ¶ 22, 598 N.W.2d 139, we recently affirmed the remedy fashioned by the trial court to reinstate benefits to the date the Bureau issued its formal order, holding that "under the circumstances" the remedy was appropriate. In this case, however, because the trial court applied *Flink* to order the reinstatement of benefits until termination procedures are recommenced, we are unable to affirm the remedy of the trial court and must determine the appropriate date for the termination of benefits.

[¶ 34] Before the Bureau may terminate continuing benefits, it must provide notice of the basis for termination, a summary of the evidence relied upon, and an opportunity to respond to the alleged grounds for termination. *E.g., Beckler*, 418 N.W.2d at 773–75. Stewart first received notice of the Bureau's claim that he had made false statements regarding income received from work in the October 24, 1997, order. That order also summarized the evidence relied upon by the Bureau. Stewart's first opportunity to challenge the Bureau's claims and evidence, and to have the Bureau consider his assertions regarding termination, came at the evidentiary hearing on April 7, 1998.

[¶ 35] Due process requires that there be some opportunity for the claimant to have a pretermination response to the intended action because "the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Loudermill*, 470 U.S. at 543, 105 S.Ct. 1487. The opportunity to have pretermination input is "of obvious value in reaching an accurate decision." *Id.* Providing an opportunity for pretermination input does not impose a significant administrative burden because a full evidentiary hearing is not required before termination so long as one is available to the claimant after termination. What is required is a meaningful opporttu-

nity to have the claimant's assertions considered before the decision to terminate is made. "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Id.* at 546, 105 S.Ct. 1487. Indeed, section 65–05–08.1, in effect in January 1997, required that Stewart be advised of "the right to respond and the procedure for challenging the action and submitting additional evidence to the bureau." Thus had the Bureau issued a NOID which complied with the *Beckler* requirements, outlining the intent to terminate and a summary of the evidence on which it relied, Stewart would have had an opportunity to provide his information to dissuade the Bureau from taking that action. Stewart was not given the information required by *Beckler* until the formal order was issued in October, several months after termination. The first opportunity that Stewart had to present his evidence for the Bureau's consideration was the post-termination hearing on April 7, 1998. We therefore conclude the appropriate remedy is to reinstate Stewart's benefits from January 13, 1997, through April 7, 1998. Because Stewart received due process by April 7, 1998, the termination of his benefits after that date is effective.

## VI

[¶ 36] Stewart asserts that, even if he is not entitled to full reinstatement of benefits for the due process violations, full reinstatement is still appropriate because the Bureau's findings that he made false statements are not supported by a preponderance of the evidence.

[¶ 37] The Bureau argues Stewart's failure to file a cross-appeal pre-

cludes him from raising this issue, because the district court held the Bureau's findings were supported by a preponderance of the evidence.[7] However, when the judgment below provides all of the relief sought by the appellee, it is unnecessary to file a cross-appeal. *State v. Sabinash,* 1998 ND 32, ¶ 19, 574 N.W.2d 827. In such a case, the appellee may attempt to save the judgment by urging any ground asserted in the trial court. *Id.* An appellee who fails to cross-appeal is only precluded from seeking greater relief than she received in the trial court. *Olson v. Olson,* 520 N.W.2d 572, 574 n. 2 (N.D.1994).

[¶ 38] The key factual dispute in this case centers upon the six checks from Outback Excavating to Stewart issued during the time he was performing work for Outback Excavating. The Bureau presented evidence showing Stewart operated a backhoe, drove a dump truck, and manually shoveled dirt and snow for Outback Excavating. Stewart concedes that he performed activities to assist his friend Jason Duncan, owner of Outback Excavating. Stewart claims, however, that he was not paid for his activities and that the six checks written to Stewart from Outback Excavating's account were for items of personal property he sold to Duncan.

[¶ 39] This issue came down to a question of credibility of witnesses. The Bureau presented evidence that these checks were issued in the same time frame as Stewart's work for Outback Excavating, and pointed to discrepancies and internal inconsistencies in Stewart's testimony. The Bureau specifically found Stewart's explanation that the checks were for personal items sold to Duncan was not credible.

7. The parties dispute whether the district court actually resolved this issue. After determining Stewart's due process rights had been violated and the delay was unreasonable, the court in its written order stated, "It also appears the Bureau established by a preponderance of the evidence that Stewart willfully failed to report income from employment."

It is immaterial whether the court's one-sentence treatment of this issue was intended to resolve the issue or was merely a comment on the evidence, because we review the decision of the Bureau and not the decision of the district court. *E.g., Bruns v. North Dakota Workers Compensation Bureau,* 1999 ND 116, ¶ 7, 595 N.W.2d 298.

[¶ 40] It is the Bureau's responsibility to assess the credibility of witnesses and resolve conflicts in the evidence. *Theige v. North Dakota Workers Compensation Bureau,* 1997 ND 160, ¶ 9, 567 N.W.2d 334. We exercise restraint and do not make independent findings or substitute our judgment for that of the Bureau, but determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence. *Bruns,* 1999 ND 116, ¶ 7, 595 N.W.2d 298. Although we may have taken a different view of the evidence, we conclude the Bureau's findings that Stewart made false statements regarding income from work are supported by a preponderance of the evidence.

## VII

[¶ 41] We have considered the other issues raised by the parties and find them to be without merit. The judgment of the district court is affirmed insofar as it ordered reinstatement of benefits for the period January 13, 1997, to April 7, 1998. The judgment is reversed insofar as it ordered reinstatement of benefits after April 7, 1998, and we remand for entry of judgment consistent with this opinion.

[¶ 42] MARING and NEUMANN, JJ., concur.

[¶ 43] RALPH R. ERICKSON, D. J., sitting in place of SANDSTROM, J., disqualified. Following oral argument, Judge ERICKSON deemed himself disqualified and did not participate in this decision.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 44] I am not convinced that the 1997 amendment to section 65–05–08.1, N.D.C.C., was intended to delete any due-process rights the claimant might have. Although the language relating to the "summary of the evidence" was deleted in the 1997 amendment, the requirement that the notice "must include a statement of the

reason for the action" was retained. The minutes of the hearings before the House and Senate Business, Industry and Labor Committee on HB 1264, which amended section 65–05–08.1, N.D.C.C., contain no reference of any intent to reduce the due-process rights of the claimant by the amendment and do not mention that particular amendment.

[¶ 45] In view of the lack of any legislative history indicating a specific intent to the contrary, and, in view of our obligation to strive to construe a statute in a constitutional light if possible, *e.g., Rothe v. S–N–Go Stores, Inc.,* 308 N.W.2d 872 (N.D. 1981), I would not imply there is a constitutional deficiency in the 1997 amendment to the statute. Rather, I would construe the statute even as amended as obligating compliance with constitutional due-process requirements.

[¶ 46] Nevertheless, I am not convinced that, as a matter of due process, the NOID must include a summary of the evidence the Bureau was relying upon to terminate benefits. I concurred specially in *Beckler v. N.D. Workers Comp. Bureau,* 418 N.W.2d 770, 775 (N.D.1988) observing that where "the Bureau was aware that [the claimant] was disputing his ability to return to work but it nevertheless terminated [the claimant's] benefits retroactively" the procedure used denied the claimant due process. *Id.* at 776.

[¶ 47] I agree the claimant is entitled to knowledge of the basic evidence upon which the Bureau relies. Whether that knowledge is made available through the NOID or some other procedure designed to inform the claimant of that evidence is not, in my opinion, a matter of due process, if the information is provided in some form.

[¶ 48] Here, the record reveals Stewart cooperated with the Bureau in answering questions during interviews by the investigators and voluntarily supplied information. Although he should have known the Bureau was suspicious about his income,

he was nevertheless entitled to know the evidence the Bureau relied on in issuing the NOID, if only to attempt to correct an arguably wrong impression the Bureau may have gleaned from the evidence. The record, however, does not reveal any attempt by the Bureau to make the evidence on which it relied in issuing the NOID available to Stewart. Insofar as the majority opinion concludes that in this case Stewart's lack of knowledge of the evidence upon which the Bureau was relying for the NOID was a denial of due process, I concur in the result.

[¶ 49] Gerald W. VandeWalle, C.J.