2005 ND 147

**Mark ROJAS, Claimant and Appellee**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellant**

and

**Holland Enterprises, Inc., Respondent.**

No. 20040352.

Supreme Court of North Dakota.

July 28, 2005.

Stephen D. Little, Dietz & Little Lawyers, Bismarck, N.D., for claimant and appellee.

Leo F.J. Wilking, Special Assistant Attorney General, Nilles, Ilvedson, Stroup, Plambeck & Selbo, Ltd., Fargo, N.D., for appellant.

MARING, Justice.

[¶ 1] Workforce Safety and Insurance ("WSI") has appealed from a district court judgment reversing WSI's final order, which denied Mark Rojas's reapplication for disability benefits, and remanding for entry of an order allowing further disability benefits. We modify the judgment and affirm as modified.

I

[¶ 2] In January 2000, Rojas injured his left knee when he slipped on ice at a truck stop in Gary, Indiana. Rojas was at the time employed as an over-the-road truck driver by Holland Trucking of Fargo, North Dakota, and was a resident of Maryland. Rojas filed a claim for workers compensation benefits, and WSI accepted the claim and paid medical and disability benefits.

[¶ 3] WSI alleges that, on May 10, 2000, it mailed a Notice of Intention to Discontinue/Reduce Benefits ("NOID") to Rojas at his last known address in Maryland advising him that his disability bene-

fits would be terminated as of May 31, 2000. Rojas claims he never received the NOID. When Rojas realized he was no longer receiving disability benefit checks, he attempted to contact his claims analyst at WSI by telephone to determine the status of his claim. Neither the claims analyst, nor anyone else from WSI, ever returned any of Rojas's calls to WSI.

[¶ 4] Faced with discontinuation of his disability benefits and WSI's failure to return his telephone calls seeking information on his claim, Rojas eventually hired an attorney. Rojas's counsel contacted WSI, explaining that Rojas had never received the NOID and wished to appeal the decision terminating his benefits. WSI responded that its prior decision to terminate Rojas's disability benefits was final, and Rojas's only option was to file a reapplication for disability benefits.

[¶ 5] Rojas filed a reapplication for disability benefits in June 2001. On July 10, 2001, WSI entered its Notice of Decision denying his reapplication. Rojas requested reconsideration and a formal hearing.

[¶ 6] In October 2001, Rojas underwent arthroscopic surgery on his knee. The surgeon diagnosed Rojas with synovial hypertrophy and atrophy of the left quadriceps. WSI paid the medical costs of the surgery and the subsequent physical therapy.

[¶ 7] A hearing before an administrative law judge ("ALJ") was held on August 20, 2003. The ALJ subsequently issued recommended findings of fact, conclusions of law, and order. The ALJ specifically found Rojas had never received the NOID. The ALJ also found Rojas had proved he had suffered a significant change in his medical condition and a resulting actual wage loss, and Rojas was therefore entitled to ongoing disability benefits from May 2001.

[¶ 8] WSI adopted some of the ALJ's recommended findings of fact and conclusions of law, and rejected others. WSI adopted the ALJ's finding that Rojas did not receive the NOID, but rejected the ALJ's findings that Rojas had shown a significant change in his medical condition and had suffered an actual wage loss. WSI therefore concluded Rojas had failed to show he was entitled to any further disability benefits under the reapplication statute.

[¶ 9] Rojas appealed from WSI's final order to the district court. The district court determined WSI had failed to adequately address the evidence favorable to Rojas and to adequately explain its rationale for rejecting the ALJ's decision. The court also found there had been improper communications between WSI's litigation counsel, WSI's in-house counsel, and WSI's final adjudicator. The district court therefore reversed WSI's order and directed WSI to reinstate the ALJ's recommended decision. WSI moved for reconsideration, seeking clarification of the court's order. In a written order, the district court responded in part that Rojas's failure to receive notice and an opportunity to respond "place[d] a greater burden on him." A final judgment was entered, and WSI appealed.

## II

■ [¶ 10] Under N.D.C.C. § 28–32–46, the district court must affirm an order of an administrative agency unless it finds any of the following are present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

On appeal from the district court's decision on an administrative appeal, this Court reviews the agency order in the same manner. N.D.C.C. § 28–32–49; *Ringsaker v. Workforce Safety & Ins. Fund,* 2005 ND 44, ¶ 9, 693 N.W.2d 14.

### III

▇ [¶ 11] The right to continuing disability benefits under the Workers Compensation Act is a property right protected by the due process clauses of the federal and state constitutions. *Sjostrand v. North Dakota Workers Comp. Bureau,* 2002 ND 125, ¶ 9, 649 N.W.2d 537; *Jacobson v. North Dakota Workers Comp. Bureau,* 2000 ND 225, ¶ 19, 621 N.W.2d 141. Before WSI terminates ongoing disability benefits, it must provide notice of the contemplated action and a meaningful pretermination opportunity to respond:

> We addressed the due process implications of termination of disability benefits in *Beckler v. North Dakota Workers Compensation Bureau,* 418 N.W.2d 770 (N.D.1988). We concluded in *Beckler* that the continuing right to workers compensation disability benefits was a property right protected by the due process clause. Analyzing the due process requirements for termination of ongoing benefits under *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), we concluded workers compensation disability benefits could be discontinued without a pretermination hearing only when there were "elaborate" pretermination procedural safeguards and a right to a timely post-termination evidentiary hearing. The pretermination procedure must include, at a minimum, pretermination notice of the contemplated action, a summary of the evidence supporting the proposed termination, and a pretermination opportunity to respond in writing to the alleged grounds for termination.

*Stewart v. North Dakota Workers Comp. Bureau,* 1999 ND 174, ¶ 12, 599 N.W.2d 280 (citations omitted); *see also Sjostrand,* at ¶ 10.

▇ [¶ 12] Before Rojas's continuing disability benefits could be terminated, he was entitled to pretermination notice of the contemplated action, a summary of the evidence, and an opportunity to respond. WSI alleges it mailed the NOID to Rojas's last known address by regular mail. The ALJ and WSI specifically found, however, that Rojas never received the NOID.

[¶ 13] This Court has repeatedly stated that "notice of an opportunity for a hearing sent by regular mail is insufficient to guarantee due process when the presumption of receipt raised by Section 31–11–03(24), N.D.C.C., is rebutted." *State v. Egan,* 1999 ND 59, ¶ 7, 591 N.W.2d 150; *In re Estates of Gustafson,* 381 N.W.2d 208, 211–12 n. 5 (N.D.1986); *State v. Tininenko,* 371 N.W.2d 762, 763 (N.D.1985); *State v. Knittel,* 308 N.W.2d 379, 384 (N.D.

1981). The potential risks of delivery of notice by regular mail have been noted:

> But, there is also some frailty in notice by ordinary mail. As Justice O'Connor dissenting in *Greene [v. Lindsey* ], 456 U.S. [444,] 460, 102 S.Ct. [1874,] 1883, [72 L.Ed.2d 249 (1982) ] observed, there is risk of "loss, misdelivery, lengthy delay, or theft" of ordinary mail and "unattended mailboxes are subject to plunder." When a statutory regime relies on the economy and efficiency of ordinary mail for the notice required by procedural due process, its purpose may fail if there is no actual notice. Where presumptive evidence "that a letter duly directed and mailed was received in the regular course of the mail" is "contradicted by other evidence," N.D.C.C. § 31–11–03(24), the issue of actual notice is for the trier of fact to decide.

*Tininenko*, at 766 (Meschke, J., specially concurring). In this case, both the ALJ and WSI made a finding of fact that Rojas did not receive any notice before his disability benefits were terminated in May 2000.

■ [¶ 14] WSI contends it is statutorily authorized to send notice of its decisions by regular mail under N.D.C.C. § 65–01–16. Compliance with the statute does not, however, relieve WSI of its duty to comport with due process, or trump a claimant's constitutional due process right to adequate notice and an opportunity to be heard. Sending the NOID to the claimant by regular mail under N.D.C.C. § 65–01–16 "is insufficient to guarantee due process when the presumption of receipt raised by Section 31–11–03(24), N.D.C.C., is rebutted." *Egan*, 1999 ND 59, ¶ 7, 591 N.W.2d 150; *Gustafson*, 381 N.W.2d at 211–12 n. 5; *Tininenko*, 371 N.W.2d at 763; *Knittel*, 308 N.W.2d at 384.

■ [¶ 15] Furthermore, this Court has repeatedly held that a claimant's due process rights are violated if the NOID does not adequately advise the claimant of the reason for the proposed termination and include a summary of the evidence relied upon by WSI. *See, e.g., Jacobson*, 2000 ND 225, ¶ 19, 621 N.W.2d 141; *Stewart*, 1999 ND 174, ¶¶ 15–19, 599 N.W.2d 280; *Vernon v. North Dakota Workers Comp. Bureau*, 1999 ND 153, ¶¶ 17–21, 598 N.W.2d 139; *Flink v. North Dakota Workers Comp. Bureau*, 1998 ND 11, ¶¶ 15–18, 574 N.W.2d 784. The requirement that the NOID set forth WSI's rationale supporting termination and delineate the evidence supporting WSI's conclusions is intended to provide the claimant with a meaningful opportunity to respond:

> [W]hen ongoing governmental benefits are to be terminated without a predeprivation hearing, the claimant must respond directly to the pretermination notice. The claims delineated in the notice are not fleshed out in an evidentiary hearing before benefits are terminated. The additional requirement of a summary of the evidence in pretermination cases is intended to allow the claimant to construct a meaningful response to the governmental action:

>> [P]rior to the cutoff of benefits the agency informs the recipient of its tentative assessment, the reasons therefor, and provides a summary of the evidence that it considers most relevant. Opportunity is then afforded the recipient to submit additional evidence or arguments, enabling him to challenge directly the accuracy of information in his file as well as the correctness of the agency's tentative conclusions. These procedures, again as contrasted with those before the Court in *Goldberg*, enable the recipient to "mold" his argument to respond

to the precise issues which the decisionmaker regards as crucial.

*Beckler*, 418 N.W.2d at 773, *quoting Mathews v. Eldridge*, 424 U.S. 319, 346, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

*Stewart*, at ¶ 18. If a claimant's due process rights are violated when he receives a notice that does not adequately set forth WSI's theories and evidence supporting termination because it deprives him of the opportunity to meaningfully respond, then certainly the failure to receive any notice at all, which completely deprives the claimant of any opportunity to respond or to seek a hearing, is also a denial of due process.

[¶ 16] We conclude WSI's termination of Rojas's ongoing disability benefits when he had not received any prior notice or opportunity to respond violated due process.

## IV

[¶ 17] The ALJ and WSI applied the reapplication statute, which requires that a claimant whose disability benefits have been discontinued must reapply for further benefits and may not receive additional benefits unless he proves (1) he has sustained a significant change in his compensable medical condition; (2) he has sustained an actual wage loss caused by the change in medical condition; and, (3) he has not retired or voluntarily withdrawn from the job market. N.D.C.C. § 65–05–08(1). The ALJ concluded Rojas was entitled to further benefits, finding that Rojas had sustained a significant change in his medical condition resulting in actual wage loss. The ALJ further determined the change in medical condition was diagnosed by Rojas's doctor on July 26, 2001, and, applying the maximum 60–day look-back for certifying disability under N.D.C.C. § 65–05–08.1(2)(d), Rojas had proven he was entitled to resumption of benefits effective May 27, 2001.

[¶ 18] When Rojas's counsel originally contacted WSI he was told that, because Rojas had failed to respond to the NOID within 30 days, WSI's decision terminating his benefits was final and his only option was to file a reapplication. By applying the reapplication statute rather than reviewing its original decision to terminate benefits, WSI placed a greater burden of proof upon Rojas, requiring him to establish not only that he was disabled but also that he had suffered a significant change in his medical condition and an actual wage loss caused by the change in condition. The reapplication statute is only applicable, however, if the claimant's prior benefits have been validly terminated. In this case, Rojas's failure to receive the NOID violated due process and effectively nullified WSI's May 31, 2000, termination of his benefits. Accordingly, the reapplication statute was inapplicable and the ALJ should not have limited reinstatement of benefits to the period beginning May 27, 2001.

[¶ 19] The appropriate remedy in this case is reinstatement of all benefits from May 31, 2000, the date of the original termination of benefits. This case is similar to *Flink*, 1998 ND 11, ¶ 19, 574 N.W.2d 784, in which the Court held that WSI was, in effect, required to start over when it had violated due process notice requirements and failed to address appropriate issues at the hearing:

Because the Bureau failed to properly address Flink's rehabilitation options and also failed to give Flink proper notice, "we hold that he is entitled to the benefits he seeks." *Beckler* at 775. The Bureau's decision denying Flink temporary total disability benefits as of May 5, 1993, is reversed, and Flink is entitled to temporary total disability

benefits retroactive to May 5, 1993, and prospectively until the Bureau adequately addresses Flink's rehabilitation options and provides proper notice of intention to discontinue or reduce benefits. Upon receiving proper notice, Flink may challenge the Bureau's decision and request a hearing.

*See also Bjerke v. North Dakota Workers Comp. Bureau,* 1999 ND 180, ¶ 23, 599 N.W.2d 329 (quoting *Flink* ).

[¶ 20] This case is distinguishable from prior cases in which this Court allowed a limited period of reinstated benefits for a due process violation when the claimant eventually received proper notice and an evidentiary hearing on all proper issues was held with a meaningful opportunity for the claimant to respond. *See, e.g., Bjerke,* 1999 ND 180, ¶ 24, 599 N.W.2d 329; *Stewart,* 1999 ND 174, ¶¶ 30–35, 599 N.W.2d 280. In *Stewart,* at ¶ 32, the Court distinguished *Flink* because in *Flink* the claimant had never received a hearing on the appropriate issues. In this case, WSI has consistently refused to allow Rojas to challenge its initial decision to terminate benefits, requiring that he instead meet the more stringent burdens under the reapplication statute. Accordingly, under *Flink,* Rojas is entitled to disability benefits retroactive to May 31, 2000, the date of the original termination, and prospectively until WSI provides proper notice of intention to discontinue or reduce benefits.

### V

[¶ 21] The parties and the district court raised the issue of alleged improper contacts between WSI's litigation counsel, WSI's in-house counsel, and WSI's final adjudicator. We recently addressed similar issues in *Miller v. Workforce Safety & Ins.,* 2004 ND 155, 684 N.W.2d 641. Because we conclude Rojas is entitled to reinstatement of all disability benefits from the date of the original termination, we find it unnecessary to address the improper communication issue.

### VI

[¶ 22] We modify the judgment of the district court to direct WSI to enter an order consistent with this opinion reinstating Rojas's disability benefits from May 31, 2000, and prospectively. As modified, the judgment is affirmed.

[¶ 23] GERALD W. VANDE WALLE, C.J., JAMES M. BEKKEN, D.J., and CAROL RONNING KAPSNER, J., concur.

[¶ 24] The Honorable JAMES M. BEKKEN, D.J., sitting in place of SANDSTROM, J., disqualified.

[¶ 25] The Honorable DANIEL J. CROTHERS did not participate in this decision.